## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>378 N. Main Avenue<br>Tucson, AZ 85701,<br><br>FRIENDS OF THE EARTH,<br>1101 15th Street, 11th Floor<br>Washington, D.C. 20005,<br><br>    and<br><br>CENTER FOR INTERNATIONAL<br>ENVIRONMENTAL LAW,<br>1101 15th Street, 11th Floor,<br>Washington, D.C. 20005,<br><br>       Plaintiffs,<br><br>   v.<br><br>UNITED STATES INTERNATIONAL<br>DEVELOPMENT FINANCE<br>CORPORATION,<br>1100 New York Avenue, NW<br>Washington, D.C. 20527,<br><br>       Defendant. | Civil Action No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.     Plaintiffs bring this lawsuit to challenge a final agency rule that attempts to exempt the United States International Development Finance Corporation ("DFC"), a federal agency, from the requirements of the Sunshine Act, 5 U.S.C. § 552b *et seq.*

1

2.      This action is brought under the Sunshine Act, 5 U.S.C. § 552b, and the

Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), to compel the DFC to provide

public access to its deliberations and meetings and otherwise comply with requirements of these

statutes.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action under 5 U.S.C. § 552b(g) and (h) (the

Sunshine Act), 5 U.S.C. § 702 (the Administrative Procedure Act), and 28 U.S.C. § 1331

(federal question jurisdiction).

4.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(e), as

this civil action is brought against an agency of the United States and under the color of legal

authority, a substantial part of the events giving rise to the claim occurred in the District of

Columbia, no real property is involved in this action, and Plaintiffs maintain offices or reside in

this judicial district.  *See also* 5 U.S.C. § 552b(h).

## PARTIES

5.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a non-profit

conservation organization with offices throughout the United States and in Mexico.  The Center

has more than 81,000 members.  For the past decade, the Center has carefully monitored both the

Overseas Private Investment Corporation ("OPIC"), which is now DFC, particularly as it relates

to agency actions that may affect federally threatened and endangered species, or otherwise may

have a significant impact upon the environment and biological diversity.  Center staff and

members have attended both OPIC and DFC public meetings and hearings over the past several

years.  Without the transparency requirements of the Sunshine Act, Center staff and members

will not receive timely public information about projects and activities of the agency, nor will

Center staff and members receive transcripts, minutes or other records and documents from agency meetings.  This depravation of a legal right causes injury to the Center, its staff, and its members, which can only be cured if DFC complies with the Sunshine Act as Congress intended.

6.     Plaintiff FRIENDS OF THE EARTH ("FoE") is an international environmental organization with 75 national member groups.  FOE-U.S. is a national non-profit conservation organization with offices in Berkeley, California and Washington, D.C., where it is headquartered, and staff located across the country.  FoE is a membership organization consisting of more than 140,000 members and almost 3 million activists nationwide. FoE is also a member of Friends of the Earth-International, which is a network of grassroots groups in 74 countries worldwide. FoE's mission is to protect our natural environment, including air, water, and land, to create a healthier and more just world. FoE utilizes public education, advocacy, legislative processes, litigation, and most importantly, open access to government processes and records, to achieve its organizational goals.  For years, FOE has advocated for more sustainable funding mechanisms and actions from both OPIC and the DFC.  FOE and its staff and members are regular attendees and participants at DFC public meetings, and are recognized experts in this field.

7.     Plaintiff CENTER FOR INTERNATIONAL ENVIRONMENTAL LAW ("CIEL") is a non-profit legal organization with offices in Washington, D.C., and Geneva Switzerland. On behalf of 50,000 supporters in the United States and worldwide, CIEL uses the power of law to protect the environment, promote human rights and ensure a just and sustainable society.  As a critical element of that mission, CIEL has monitored and engaged with OPIC and now DFC for more than 25 years.  CIEL played an active role in civil society efforts that led to the establishment of OPIC's Accountability Mechanism.  CIEL has prepared guides for civil

society participation in OPIC processes.  CIEL has represented communities harmed by OPIC-financed projects. In support of these efforts, CIEL staff have attended both OPIC and DFC public meetings and hearings over more than two decades.  Without the transparency requirements of the Sunshine Act, CIEL will not receive timely information about projects and activities of the agency, nor will CIEL staff receive transcripts or documents from agency meetings.  This deprivation of a legal right causes injury to CIEL, its staff and supporters, and the communities around the world with whom CIEL partners.  This injury can only be cured if the DFC complies with the Sunshine Act as Congress intended.

8.      Defendant United States International Development Finance Corporation (or "DFC") is a federal agency created by the 2018 "BUILD Act."  P.L. 115-254, 132 Stat.3485 (October 5, 2018).  Its predecessor entity was called OPIC ("Overseas Private Investment Corporation"), which was also a federal agency created by Congress.

## LEGAL FRAMEWORK AND BACKGROUND

9.      On April 13, 2020, DFC published a rule exempting itself from the Sunshine Act, alleging that DFC does not meet the definition of "agency" under the Act.  Sunshine Act Exemption Regulation, 85 Fed. Reg. 20,423 (Apr. 13, 2020).

### A.      The DFC's Functions and Powers

10.      Previously, in 2018, Congress passed the Better Utilization of Investments Leading to Development Act, or the BUILD Act, which in turn created the DFC. 22 U.S.C. § 9612(a).

11.      The BUILD Act establishes a Board for the DFC.  The DFC is composed of a Board of Directors made of nine members.  The statute breaks the Board composition into three distinct categories: (i) the Chief Executive Officer of the Corporation; (ii) four officers specified

in subparagraph (B); and (iii) four other individuals who shall be appointed by the President, by and with the advice and consent of the Senate.  22 U.S.C. § 9613(b)(2)(A).

12.     The four officers identified in subparagraph (B) are the Secretary of State (or designee), the Administrator of the U.S. Agency for International Development (or designee), the Secretary of the Treasury (or designee), and the Secretary of Commerce (or designee).  22 U.S.C. § 9613(a)(2)(B).  These are the four *ex officio* members of the new DFC Board.

13.     The Chief Executive Officer of the Corporation is nominated by the President with the advice and consent of the Senate.  22 U.S.C. § 9613(d)(1).  The Chief Executive Officer is the ninth and final member of the Board.  22 U.S.C. § 9613(b)(2)(A)(i).

14.     The Chief Executive Officer is "responsible for the management of the Corporation and shall exercise the powers and discharge the duties of the Corporation subject to the bylaws, rules, regulations, and procedures established by the Board," of which the Chief Executive Officer is a part.  22 U.S.C. § 9613(d)(2).

15.     The DFC combines and modernizes the existing development finance functions of a former federal agency known as OPIC and the U.S. Agency for International Development's ("US AID") Development Credit Authority.  *See, e.g.*, 22 U.S.C. § 9684 (terminating OPIC after creation of the DFC); *see also* DFC Overview, https://www.dfc.gov/who-we-are/overview (last visited May 27, 2021).

16.     The DFC is directed by statute "to mobilize and facilitate the participation of private sector capital and skills in the economic development of less developed counties . . . in order to complement the development assistance objectives, and advance the foreign policy interests, of the United States."  22 U.S.C. § 9612(b).

17.     The BUILD Act possesses two "public hearing" provisions, neither of which are as comprehensive as the Sunshine Act.

18.     The first public hearing provision states that the DFC Board "shall develop, in consultation with stakeholders, other interested parties, and the appropriate congressional committees, a publicly available policy with respect to consultations, hearings, and other forms of engagement in order to provide for meaningful public participation in the Board's activities." 22 U.S.C. § 9613(b)(1)(C).

19.     The second public hearing provision states that the DFC "Board shall hold at least 2 public hearings each year in order to afford an opportunity for any person to present views with respect to whether — (1) the Corporation is carrying out its activities in accordance with this division; and (2) any support provided by the Corporation under title II in any country should be suspended, expanded, or extended."  22 U.S.C. § 9613(c).

20.     OPIC was subject to the Sunshine Act.  OPIC was an "agency" under the Sunshine Act.  *See, e.g.*, 84 Fed. Reg. 6839–40 (Feb. 28, 2019).

21.     Nothing in the legislative history indicates Congress wanted to change course with the DFC and exempt this new agency from the Sunshine Act, as its predecessor agency, OPIC, was subject the Sunshine Act.

**B.      The Sunshine Act**

22.     The Sunshine Act requires that "every portion of every meeting" of a multi-member agency must "be open to public observation," with narrow exceptions, 5 U.S.C. § 552b(b)–(c).  The Sunshine Act also requires agencies to announce publicly the time, place, and subject matter of meetings at least a week before the meeting, 5 U.S.C. § 552b(e)(1), and to

prepare a complete transcript or electronic recording of meetings that are closed for any reason, 5 U.S.C. § 552b(f).

23.     Agencies must also promulgate regulations implementing the requirements of the Sunshine Act.  5 U.S.C. § 552b(g).

24.     "Congress enacted the Sunshine Act to open the deliberations of multi-member federal agencies to public view."  *Common Cause v. Nuclear Reg. Comm'n*, 674 F.2d 921, 928 (D.C. Cir. 1982).  The Sunshine Act is "founded on the proposition that the government should conduct the public's business in public."  S. Rep. No. 354, 94th Cong., 1st Sess. 1; Conf. Re. No. 1178, 94th Cong., 2d Sess. 9 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News 2183, 2245.

25.     Under the Sunshine Act, the term "agency" means "any agency . . . headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate."  5 U.S.C. § 552b(a)(1).

26.     On at least two occasions, DFC scheduled a Sunshine Act meeting before deciding in April 2020 that it was no longer subject to the Sunshine Act.  *See, e.g.*, 85 Fed. Reg. 12,777 (Mar. 4, 2020) (DFC announcement of Sunshine Act meeting); 84 Fed. Reg. 66,436 (Dec. 4, 2019) (joint DFC and OPIC announcement of Sunshine Act meeting).

C.     **The Administrative Procedure Act**

27.     The APA governs the public access and transparency of actions of all federal agencies, including agency final rules.  5 U.S.C. § 552 *et seq.*

28.     Under the APA, a reviewing court "shall" set aside agency actions, findings, or conclusions when they are arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law"; when they are adopted "in excess of statutory jurisdiction, authority, or

limitations, or short of statutory right"; or when they are adopted "without observance of

procedure required by law."  5 U.S.C. § 706(2)(A), (C), (D).

29.     An agency action is arbitrary and capricious if the agency "relied on factors which

Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency," or if the agency's decision "is so implausible that it could not be ascribed to a

difference in view or the product of agency expertise."  *Motor Vehicle Mfr. Ass'n v. State Farm

Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

30.     When reviewing agency action under the APA, the court must ensure that the

agency reviewed the relevant data and articulated a satisfactory explanation establishing a

"rational connection between the facts found and the choice made."  *Motor Vehicle Mfr. Ass'n*,

463 U.S. at 43.  The agency's failure to do so renders its decision arbitrary and capricious.

*Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989).

31.     The APA defines a rule as "the whole or a part of an agency statement of general

or particular applicability and future effect designed to implement, interpret, or prescribe law or

policy." 5 U.S.C. § 551(4).

32.     The adoption of legislative rules must comply with the notice-and-comment

provisions of the Administrative Procedure Act. 5 U.S.C. § 553.  *See also Nat'l Family Planning

& Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 235 (D.C. Cir. 1992).

### D.     Nonbinding Agency Guidance

33.     Defendants' final rule exempting itself from the Sunshine Act also cited policy

guidance from the Department of Justice that never went through public comment and is

nonbinding.  *See Whether the Millennium Challenge Corporation Should Be Considered an*

*''Agency'' for Purposes of the Open Meeting Requirements of the Sunshine Act*, 37 Op. O.L.C.

(May 3,2013) (hereinafter, "MCC Legal Opinion") (believing the *ex officio* definition extends to

the CEO of the MCC because it is listed in the same subsection as other traditionally *ex officio*

members).

34.     However, the Millennium Challenge Corporation ("MCC") statute is different

from the BUILD Act.  *Compare* Millennium Challenge Act Board provisions, 22 U.S.C.

§ 7703(c), *with* BUILD Act creating DFC Board 22 U.S.C. § 9613(b) (designating the CEO of

the board in its own distinct subsection separate from the listing of traditionally *ex officio*

members).

35.     The MCC Board also has nine members, but Congress explicitly grouped these

members in a very specific and different way.  Specifically, Congress requires the MMC Board

include "(A) the Secretary of State, the Secretary of the Treasury, the Administrator of the

United States Agency for International Development, the Chief Executive Officer of the

Corporation, and the United States Trade Representative; and (B) four other individuals with

relevant international experience who shall be appointed by the President, by and with the advice

and consent of the Senate." 22 U.S.C. § 7703(c).

36.     The U.S. Department of Justice and Office of Legal Counsel ("OLC") relied on

this structural organization of the MCC statute to extend the ex officio definition to the CEO of

the MCC.  *See* MCC Legal Opinion, *supra*.

**E.**     **Previous OPIC Law**

37.     DFC's predecessor agency, the Overseas Private Investment Corporation (OPIC), also possessed a Board, which also included the Board President, who served as chief executive officer.  22 U.S.C. § 2193(c) (repealed).

38.     There are many similarities between the OPIC organic statute and the BUILD Act, including the purposes and procedures of the agency corporations created by the two statutes.  For example, the OPIC organic statute did not explicitly mention the Sunshine Act, but explicitly provided for public hearings.  *See* 22 U.S.C. § 2191a(c) (repealed).

39.     DFC's agency predecessor OPIC did comply with the Sunshine Act.  *See, e.g.*, 84 Fed. Reg. 6839–40 (Feb. 28, 2019) (Notice of OPIC Sunshine Act meeting).

40.     In addition, the OPIC chief executive served on the OPIC Board.  *See* 22 U.S.C. § 2193(c) (repealed).

41.     The DFC chief executive also serves on the new DFC Board.

## FACTUAL BACKGROUND

42.     The DFC Sunshine Exemption Regulation issued on April 13, 2020, asserted that Defendant DFC is not "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate."  5 U.S.C. § 552b(a)(1).

43.     Defendant agency did not issue a proposed rule for exempting itself from the Sunshine Act, nor did it allow for any public notice and comment on the issue of exempting itself from the Sunshine Act.

44.     The rule addresses that "four of the nine DFC board members are appointed by the President with the advice and consent of the Senate solely for the purpose of serving on

DFC's Board."  DFC classifies the remaining five members, including the Chief Executive Officer of the DFC, as "hold[ing] their position by virtue of appointment to a different office." Sunshine Act Regulations, 85 Fed. Reg. 20,243 (Apr. 13, 2020).

45.     The final rule decides the Chief Executive Officer of the DFC, who simultaneously serves on the Board, was not appointed by the President with the advice and consent of the Senate for the purpose of serving on the DFC Board.  *Id.*

46.     The DFC has held meetings for the purpose of accomplishing its statutory duties but has not provided for public access to those meetings nor has it complied with any of the other requirements of the Sunshine Act.

47.     The DFC will conduct additional meetings in the future but does not intend to comply with the Sunshine Act.  *See* Sunshine Act Exemption Regulation, 85 Fed. Reg. 20,423 (Apr. 13, 2020).

48.     A rule is substantive or legislative when it has "the force and effect of law." *Kisor v. Wilkie*, __ U.S. __, 139 S. Ct. 2400, 2420 (2019) (citation omitted). Unlike "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice," "[t]he APA mandates that substantive, legislative rules be promulgated only after public notice and comment.'" *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 356 (D.C. Cir. 2017) (quoting 5 U.S.C. § 553(b)(3)(A)).

49.     An agency decision to exempt itself from the Sunshine Act, particularly under the facts of this case where the DFC is breaking from both precedent and tradition, is a substantive and legislative rule.

50.     Defendant DFC appears to take the position that the chief executive of the DFC is somehow *ex officio* to his own agency.  This legal and factual position was not subjected to public notice and comment.

51.     DFC's theory is illogical and belied by the plain language of the statute.  The President nominates the DFC chief executive "for such position" and that position explicitly includes a spot on the Board by statute.  22 U.S.C. § 9613.  *But see* Letter from Liam P. Hardy, Deputy Assistant Att'y Gen., to Kevin L. Turner, Vice President and Gen. Counsel, U.S. Int'l Dev. Fin. Corp., (Feb. 25, 2020) (hereinafter "DFC Legal Memo") ("The fifth director, DFC's Chief Executive Officer, is also 'properly regarded as one of these ex officio members, because by statute the CEO is appointed to a separate office and serves on the Board by virtue of that separate office'" (citing 22 U.S.C. § 9613(d)(1) and the MCC Legal Opinion).

52.     This DFC Legal Memo, which also did not go through notice and comment under the APA, blindly follows the conclusion of the MCC Legal Memo but does not take into account the specific differences in the DFC's organic statute, nor the unique history and operations of the DFC's predecessor agency.

53.     As Defendants noted in the final rule exempting itself from the Sunshine Act, as well as the DFC Legal Memo, *supra*, the leading case in this Circuit on this issue is *Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238 (D.C. Cir. 1981).  As *Symons* states, the definition of agency in the Sunshine Act "is quite specific."  *Id.* at 239–40, *citing* 5 U.S.C. § 552b(a)(1).

54.     The issue in *Symons* was the phrase "a majority of who are appointed to *such position*."  *Id.* at 240. The court explained that "although all Board members have been appointed to some position by the President with the advice and consent of the Senate, they were not so

appointed to their *Board* positions.  Rather, they serve, according to statutory mandate, by virtue of the other offices they hold."  *Id.*

55.     Thus, in *Symons*, the President had already appointed, and the Senate had already confirmed, *all* board members for other, unrelated, positions (for example, the Secretary of the Treasury).  These board members are called "ex officio" board members.  *Id.* at 242 (citing *Government in Sunshine Act: Hearings on H.R. 11656 Before the Subcomm. on Administrative Law and Gov't Relations of the House Committee on the Judiciary*, 94th Cong, 2d sess. 16 (1976)).

56.     Further, "[a]lthough the idea of listing covered agencies was ultimately rejected by Congress for the reasons just stated, both the Senate Report and the House Judiciary Report set forth what Congress believed was a complete list of entities that would be covered by the Sunshine Act's definition of "agency." It should be noted that not one of the forty-seven agencies listed had a majority of ex officio members. Each one had a majority of persons who were appointed by the President *to the agency itself*." *Symons*, 670 F.2d at 244 (emphasis added).

57.     The DFC has conducted meetings over the last year but has not followed the requirements of the Sunshine Act.  *See, e.g.,* DFC Meeting Notices without Sunshine Act compliance on December 10, 2020, https://www.dfc.gov/sites/default/files/media/documents/Website%20Notice%20-%20Meeting%20Agenda%20-%2003-09-2021.pdf, and March 9, 2021, https://www.dfc.gov/sites/default/files/media/documents/Website%20Notice%20-%20Meeting%20Agenda%20-%2003-09-2021.pdf.

## CLAIMS FOR RELIEF

<u>First Claim – Failure to Issue a Proposed Rule and Provide for Public Comment
Under the Administrative Procedure Act</u>

58.     Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

59.     The APA requires that legislative rules be adopted through notice and comment rulemaking. 5 U.S.C. § 553.

60.     The DFC rule exempting itself from the Sunshine Act was not subject to public notice and comment.  5 U.S.C. § 553.

61.     The DFC's failure to provide adequate notice to the public and failure to provide an opportunity for public comment on a proposed rule harms Plaintiffs and is not in accordance with the Administrative Procedure Act. 5 U.S.C. §§ 553, 706(2)(A).

<u>Second Claim – Violation of the Sunshine Act and the APA</u>

62.     Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

63.     The Sunshine Act requires "each agency subject to the requirements" of the Sunshine Act to comply with its open meeting, public notice, and agency business requirements of the Sunshine Act. 5 U.S.C. § 552b(a), (b), (e).

64.     DFC is a federal agency under the Sunshine Act and subject to the Sunshine Act.

65.     The DFC's final rule exempting itself from the Sunshine Act is contrary to the Sunshine Act and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA. 5 U.S.C. §§ 552b(a), (b); 706(2).

66.     DFC's failure to comply with the Sunshine Act and APA is injuring and will continue to injure Plaintiffs by preventing them from learning about and attending the DFC's meetings, deliberations, and operations.

<u>Third Claim – Violation of the Sunshine Act and APA, Failure to Act</u>

67.     Plaintiffs re-allege and incorporate by reference all the allegations set forth in this Complaint, as though fully set forth below.

68.     The Sunshine Act requires each "agency" that is subject to the Act to promulgate regulations implementing the Sunshine Act's requirements.  5 U.S.C. § 552b(g).

69.     DFC is an "agency" subject to the Sunshine Act yet has failed to promulgate agency Sunshine Act regulations.

70.     In failing to promulgate regulations and take other steps necessary to implement the Sunshine Act—including open meeting, transcript, minutes, and record keeping requirements—DFC has unlawfully withheld and unreasonably delayed required agency action. 5 U.S.C. §§ 552b(b), (j), (k); 706(1).

71.     DFC's failure to comply with the Sunshine Act is injuring and will continue to injure Plaintiffs by preventing them from learning about and attending all of the DFC's meetings, deliberations, and operations.

**PRAYER FOR RELIEF**

For these reasons, Plaintiffs requests that the Court:

(1)     Enter an order declaring that the DFC:

(a)     is subject to the Sunshine Act, and is currently violating the Sunshine Act's requirements;

(b)     is unlawfully withholding and unreasonably delaying agency action, and is

acting arbitrarily, capriciously, and contrary to law, in violation of the

APA.

(2)     Enter an order permanently enjoining the DFC from conducting any further

meetings unless and until it undertakes to comply with the requirements of the

Sunshine Act, 5 U.S.C. §§ 552b(a)–(m).

(3)     Enter an order directing the DFC to comply promptly with the requirements of the

Administrative Procedure Act and the Sunshine Act, and to issue a proposed rule,

open to public comment, on how the agency will comply with the Sunshine Act

within 90 days of the order, with a final rule promulgated appropriately thereafter.

(4)     Award plaintiff(s) their costs, reasonable attorneys' fees, and other disbursements

in this action; and

(5)     Grant such other and further relief as the Court may deem just and proper.


Dated:  June 2, 2021                          Respectfully submitted,


                                              /s/  *William J. Snape, III*
                                              William J. Snape, III (DC Bar No. 455266)
                                              Center for Biological Diversity
                                              American University Law School
                                              4300 Nebraska Ave, NW
                                              Washington, D.C. 20016
                                              wsnape@wcl.american.edu
                                              bsnape@biologicaldiversity.org
                                              (202) 536-9351

                                              *Counsel for Plaintiffs*