## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | |
| Plaintiffs, | Civil Action No. 1:21-cv-1491-CRC |
| v. | |
| UNITED STATES INTERNATIONAL DEVELOPMENT FINANCE CORPORATION, | |
| Defendant. | |

## DECLARATION OF KATE DEANGELIS

I, KATE DEANGELIS, declare as follows:

1.      The facts set forth in this declaration are based upon my personal knowledge. If called as a witness, I could and would testify to these facts. As to those matters that reflect an opinion, they reflect my personal opinion and judgment on the matter.

2.      I am submitting this declaration on behalf of myself and Friends of the Earth United States (FOE). I am currently a member of FOE. I have also been a staff member of FOE since 2014 and am the organization's International Finance Program Manager. In this role, I specifically work on issues under the jurisdiction of the U.S. International Development Finance Corporation (DFC) and its predecessor, the Overseas Private Investment Corporation (OPIC). I have focused on these issues since 2015.

3.     FOE is a 501(c)(3) non-profit, membership-based organization with offices located in California and Washington, DC.  FOE currently has over 2.9 million activists and over 138,000 members, located across all 50 states and the District of Columbia.  FOE is also a member of Friends of the Earth-International, which is a network of grassroots groups in 74 countries worldwide. FOE's primary mission is to defend the environment and champion a healthier and more just world by collectively ensuring environmental and social justice, human dignity, and respect for human rights and peoples' rights.

4.     FOE began its Overseas Private Investment Corporation (OPIC) work in the mid-1990s when FOE successfully expanded the environmental and social policy frameworks for the OPIC, the U.S. development finance agency. In 2002, we filed a precedent-setting climate lawsuit against OPIC and the U.S. Export-Import Bank (EXIM) that resulted in the first-ever climate policies at these institutions. We have played a key influential role in progressive improvement in these policies ever since. More recently, we played a pivotal role in ensuring that the climate, environmental, and social protections and transparency and accountability policies that we fought for decades to attain at OPIC were carried over to the newly established U.S. International Development Finance Corporation (DFC), which absorbed OPIC and more than doubled the financing capacity. For example, we successfully pushed for OPIC's cap and reduction schedule for its portfolio of greenhouse gas emissions transferred over to DFC. As part of this process, we locked in and locked in commitments to the policy's enforcement by the agency's most senior officials. In addition, we successfully advocated for the maintenance and improvement of OPIC's Office of Accountability where project impacted communities can file complaints that can go through mediation or problem solving.

5.      Prior to the creation of DFC, I and other FOE colleagues have for many years taken part in public hearings and provided comments and engaged around board decisions on projects and policies at OPIC. We were heavily reliant on notification in the Federal Register to learn about upcoming public hearings as well as the proposed projects and policies that the OPIC board would be voting on. These notifications allowed us to properly prepare our comments, weigh in on the relevant topics, inform the public about pending decisions and upcoming opportunities to engage, and place op-eds and blogs on pending projects in a timely fashion. Open access to these meetings and deliberations is in the public interest as evidenced by recent findings from FOE, showing that EXIM ignored risks when approving support for the Mozambique LNG project in northern Mozambique.[1] In addition, thanks to the Sunshine Act, we were able to receive notes from the board meeting that approved support for the Vaca Muerta fracking projects in Argentina. These notes revealed the concerned that were raised and dismissed one by one on the project. We also drove calls on the Vaca Muerta project to encourage Senators to voice opposition to OPIC; submitted comments with almost 4,500 signatures of our members; published an opinion piece in DevEx with Maria Marta Di Paolo; and helped members of Congress submit letters in opposition to Vaca Muerta. We submitted comments with 28,000 signatures of our members and activists opposing OPIC support for a coal plant in Kosovo. FOE participated in the following OPIC hearings recently:

(a)      On June 15, 2017, I presented on an upcoming report analyzing Power Africa transactions. I recommended that OPIC continue its practice of not financing coal

---

[1] Paul Burkhardt & Matthew Hill, *U.S. Export-Import Bank Warned on Mozambique Risks Before $4.7 Billion Loan*, Bloomberg (Apr. 6, 2021), https://www.bloomberg.com/news/articles/2021-04-06/u-s-ex-im-warned-on-mozambique-risks-before-4-7-billion-loan.

projects; discontinue, over time, the financing oil and gas projects; and continue financing clean energy projects. This presentation allowed for a continued discussion on the climate impacts of gas and the benefits of distributed renewables.

(b)     On September 14, 2017, I presented on a review of projects financed under the Power Africa initiative, which aimed to provide visibility into the types of energy projects being financed by the U.S. Government and recommended an increase in support for distributed renewables.

(c)     On December 14, 2017, I presented at OPIC's hearing on OPIC's potential support for a liquefied natural gas (LNG) project in Vietnam. At the hearing I requested the letter of interest, expressed concern for such support, and explained the negative impacts of LNG. I later received the letter of interest on the project.

(d)     On December 6, 2018, I presented on why OPIC should not support the Kosovo coal plant and recommendations for OPIC's transition to DFC, including the need to be a leader in environmental and social policies. This presentation allowed for continued engagement with OPIC on the Kosovo coal plant, which resulted in OPIC not supporting the project.

(e)     On June 5, 2019, while I was a maternity leave, my colleague Karen Orenstein presented to OPIC on fossil fuel financing and support for renewable energy, opposition to the Kosovo coal plant, and the need for transparent processes and meaningful engagement with civil society.

(f)    On September 4, 2019, Karen Orenstein presented to the OPIC board on the negative impacts of the Vaca Muerta fracking projects in Argentina and urged OPIC to not support the projects.

6.    At the end of 2019, DFC succeeded OPIC. Following this change, I continued to take part in DFC public hearings when they were announced in the Federal Register and participated in the following:

(a)    On June 3, 2020, I presented on the findings of our recent reports with regards to OPIC's support for energy projects from 2005 to 2019. From this analysis, FOE recommended that OPIC increase its support for renewables, end its support for fossil fuels, and improve its accounting of its greenhouse gas emissions.

(b)    On December 10, 2020, I presented on the flaws in DFC's accounting of its greenhouse gas emissions, DFC's underestimation of the climate impact of methane, and discouraged DFC from support the Pearl Petroleum project in Iraq.

7.    On April 13, 2020, without any prior public notice or comment opportunity, which is itself very problematic for me and FOE, and harms us, the DFC announced in the federal register the final decision to exempt itself from the open meeting requirements of the Sunshine Act.[2] In this announcement, DFC claimed that the Sunshine Act no longer applied to DFC because DFC was substantially different from OPIC and was not considered an agency.

8.    On September 9, 2020, DFC had a board meeting that was closed to the public and was not noticed in the Federal Register because they had since claimed that the Sunshine Act did not apply to them. It was only listed on their website ten days or less before the board

---

[2] *See* 85 Fed. Reg. 20423, DFC Regulations, 22 CFR Part 708 (Apr. 13, 2020), https://www.govinfo.gov/content/pkg/FR-2020-04-13/pdf/2020-07684.pdf

meeting. Since it was not in the Federal Register and not listed for a sufficient period on DFC's website, I did not find out about the board meeting until the day of. At this board meeting, the board voted on the Rovuma LNG project – a liquefied natural gas development and export project in northern Mozambique. I have been working closely with Friends of the Earth Mozambique/Justica Ambiental on this project since 2015, visiting impacted communities, and writing comments and reports analyzing the environmental and social impact assessment and other findings. Without this notification and ability to comment, DFC approved up to $1.5 billion in political risk insurance for the project despite the increasing violence, negative impacts on local communities, and massive greenhouse gas emissions.

9.      In order to effectively do my job, I need public notice of upcoming DFC meetings and open access to those meetings and deliberations. The Sunshine Act mandates proper notice and access to DFC board meetings as I experienced – and greatly relied on – at OPIC. As exemplified by the Rovuma LNG vote, without the Sunshine Act requirements, DFC will provide very little notice, which has the effect of minimizing public knowledge and engagement. This allows DFC to approve highly controversial projects with far less public attention.

10.     DFC is currently considering supporting projects, including the Son My LNG project in Vietnam and the Malicounda heavy fuel oil power plant in Senegal. These projects and others could have potentially devastating impacts on local communities and the local environmental while providing little improvements to energy access. Instead, alternative distributed renewable projects, such a wind microgrid project, are available and would provide access to electricity much faster and more affordably, without the devastating social costs associated with fossil fuel development like the Rovuma LNG project. Being able to advocate against these dirty, harmful projects and for these more sustainable projects at these public

hearings is key to FOE's mission of fighting for a healthier and more just world. If I do not know that these meetings are happening because they are not sufficiently and publicly noticed in the Federal Register, then I cannot participate and provide relevant comments to the board. Without this participation, my comments will not be in the board notes to help influence future project decision and development of policies. Failure to receive appropriate public notice about these meetings and deliberations also prevents FOE from being able to disseminate the information to the public.

11.      For all the reasons so stated, I am personally harmed and Friends of the Earth is harmed by the lack and deprivation of information created by the DFC's decision to exempt itself from the Sunshine Act and by the DFC's failure to follow the Sunshine Act.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this  _27_  day of May, 2021.

_Kate DeAngelis_

_____
                    Kate DeAngelis