**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-cv-1491 (CRC) |
| | ) | |
| U.S. INTERNATIONAL DEVELOPMENT | ) | |
| FINANCE CORPORATION, | ) | |
| | ) | |
| Defendant | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.     The Government in the Sunshine Act ................................................................... 2

    II.    The U.S. International Development Finance Corporation ................................... 3

    III.   This litigation .................................................................................................... 5

ARGUMENT ........................................................................................................................... 5

    I.     Legal standards applicable to a motion to dismiss............................................... 5

    II.    The complaint fails to meet the jurisdictional requirements of standing and
          ripeness because the plaintiffs' challenge is not tied to any specific request for
          information................................................................................................... 7

          A.    The plaintiffs cannot establish standing because their challenge is not tied
                to any specific request for information. ...................................................... 7

          B.    The plaintiffs also cannot meet the jurisdictional requirement of ripeness.
                ................................................................................................................ 10

    II.    The complaint does not state a claim under either the APA or the Sunshine Act. .11

          A.    The plaintiffs cannot bring claims under the APA because the judicial
                review provisions of the Sunshine Act provide an adequate remedy.........11

          B.    The DFC's removal of obsolete OPIC regulations did not require notice
                and comment. .......................................................................................... 12

          C.    Even if notice and comment had been required, the failure to provide
                notice and comment was harmless............................................................ 14

          D.    The plaintiffs' claims fail on the merits because the DFC is not an
                "agency" under the Sunshine Act. ............................................................ 15

          E.    Even if the DFC were subject to the Sunshine Act, the only permissible
                relief would be an order requiring the DFC to adopt Sunshine Act
                regulations................................................................................................ 16

CONCLUSION........................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*,
    468 U.S. 737 (1984) ................................................................................. 7

*Baisden v. Barr.*,
    No. 19-cv-3105 (KBJ), 2020 WL 6118181 (D.D.C. Oct. 16, 2020) ...................... 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................. 6

*Chlorine Inst., Inc. v. Fed. R.R. Admin.*,
    718 F.3d 922 (D.C. Cir. 2013) .................................................................. 10

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*,
    846 F.3d 1235 (D.C. Cir. 2017) ........................................................... 11, 12

*Ctr. for Biological Diversity v. Haaland*,
    849 F. App'x 2 (D.C. Cir. 2021) (unpublished per curiam decision) ...................... 8

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) .................................................................... 6

*Elec. Priv. Info. Ctr. v. IRS*,
    910 F.3d 1232 (D.C. Cir. 2018) ................................................................ 12

*Feldman v. FDIC*,
    879 F.3d 347 (D.C. Cir. 2018) .................................................................. 10

*Friends of Animals v. Jewell*,
    828 F.3d 989 (D.C. Cir. 2016) .................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .............................................................................. 1, 7

*Garcia v. Vilsack*,
    563 F.3d 519 (D.C. Cir. 2009) ............................................................. 11, 12

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
    920 F.3d 1 (D.C. Cir. 2019) (per curiam) .................................................. 14

*Hadson Gas Sys., Inc. v. FERC*,
    75 F.3d 680 (D.C. Cir. 1996) .................................................................... 15

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) .................................................................... 6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ........................................................................... 5

*Kowal v. MCI Commc'ns Corp.*,
    16 F.3d 1271 (D.C. Cir. 1994) .......................................................... 6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
    140 S. Ct. 2367 (2020) ..................................................................... 14

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ......................................................................... 10

*Nat. Res. Def. Council v. Wheeler*,
    955 F.3d 68 (D.C. Cir. 2020) ........................................................... 13

*Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*,
    216 F.3d 1180 (D.C. Cir. 2000) .................................................. 2, 17

*Nat'l Min. Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014) ......................................................... 13

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
    538 U.S. 803 (2003) ......................................................................... 10

*Pan Am. World Airways, Inc. v. Civ. Aeronautics Bd.*,
    684 F.2d 31 (D.C. Cir. 1982) (per curiam) ........................................ 3

*Phoenix Consulting, Inc. v. Republic of Angola*,
    216 F.3d 36 (D.C. Cir. 2000) ........................................................... 10

*Price v. Socialist People's Libyan Arab Jamahiriya*,
    294 F.3d 82 (D.C. Cir. 2002) ............................................................ 6

*Prisology, Inc. v. Fed. Bureau of Prisons*,
    852 F.3d 1114 (D.C. Cir. 2017) ......................................................... 8

*Pub. Citizen v. Dep't of State*,
    276 F.3d 634 (D.C. Cir. 2002) ......................................................... 13

*Pub. Citizen v. U.S. Dep't of Justice*,
    491 U.S. 440 (1989) ........................................................................... 7

*Sheppard v. Sullivan*,
    906 F.2d 756 (D.C. Cir. 1990) ......................................................... 14

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ........................................................................... 9

*Symons v. Chrysler Corp. Loan Guarantee Bd.*,
   670 F.2d 238 (D.C. Cir. 1981) ..................................................................... 1, 4, 16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ........................................................................................... 6

*TransUnion LLC v. Ramirez*,
   No. 20-297, 2021 WL 2599472 (U.S. June 25, 2021) ........................................ 7

*Trump v. New York*,
   141 S. Ct. 530 (2020) ....................................................................................... 10

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   136 S. Ct. 1807 (2016) ...................................................................................... 11

*Union of Concerned Scientists v. U.S. Dep't of Energy*,
   998 F.3d 926 (D.C. Cir. 2021) ......................................................................... 8, 9

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. III ................................................................................................ 1, 7

## FEDERAL STATUTES

Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 .................... passim

   5 U.S.C. § 551(5) ............................................................................................. 12

   5 U.S.C. § 553 .................................................................................................. 12

   5 U.S.C. § 553(b)(3)(A) ................................................................................ 1, 12

   5 U.S.C. § 704 ............................................................................................1, 11, 12

Better Utilization of Investments Leading to Development (BUILD) Act of 2018, Pub L.
   No. 115-254, div. F, 132 Stat. 3186, 3485 ...................................................... 3, 4

   22 U.S.C. § 9613(b)(2)(A) ............................................................................. 4, 15

   22 U.S.C. § 9613(b)(2)(A)(i) ............................................................................. 16

   22 U.S.C. § 9613(c) ............................................................................................. 4

   22 U.S.C. § 9613(d)(1) ...................................................................................... 16

   22 U.S.C. § 9671(e)(2) ........................................................................................ 4

   22 U.S.C. § 9686(a)(1) ........................................................................................ 3

Freedom of Information Act, 5 U.S.C. § 552...............................................................11, 12

    5 U.S.C. § 552(a)(2)................................................................................................ 8

Government in the Sunshine Act, 5 U.S.C. § 552b................................................. passim

    5 U.S.C. § 552b(a)(1)............................................................... 4, 13, 15, 16

    5 U.S.C. § 552b(b) ............................................................................................... 2

    5 U.S.C. § 552b(g) .................................................................................... 2, 16, 17

    5 U.S.C. § 552b(h)(1) ................................................................................... 2, 17

    5 U.S.C. § 552b(h)(2) ................................................................................... 3, 17

## FEDERAL RULES

    Fed. R. Civ. P. 12(b)(6) ....................................................................................... 6

    Fed. R. Civ. P. 15................................................................................................. 5

## OTHER AUTHORITIES

    84 Fed. Reg. 37,751 (Aug. 2, 2019)................................................................. 3

    85 Fed. Reg. 20,423 (Apr. 13, 2020) .......................................................... 3, 4

    Richard K. Berg et al., An Interpretive Guide to the Government in the Sunshine Act 174 (2d ed. 2005) ................................................................................................. 13

    U.S. Int'l Dev. Fin. Corp., Public Hearing of the DFC Board of Directors....................... 4

## PRELIMINARY STATEMENT

The U.S. International Development Finance Corporation (DFC) correctly and properly determined that it is not subject to the open-meeting requirements of the Government in the Sunshine Act (Sunshine Act), 5 U.S.C. § 552b. The Court should dismiss this action for lack of subject matter jurisdiction or failure to state a claim.

As a threshold matter, the plaintiffs cannot meet the jurisdictional requirement of standing. They do not allege that they sought and were denied access to particular agency records or meetings, so they have not suffered any "concrete and particularized" injury from any action taken by the DFC, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). An abstract challenge to the DFC's interpretation of the Sunshine Act, not tied to specific agency records or meetings, falls outside the limits of Article III of the Constitution.

The complaint also fails to state a claim for relief. The plaintiffs cannot rely on the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706, because the Sunshine Act contains its own specialized judicial review provisions, and the APA does not provide a claim when the plaintiffs have an "adequate remedy" other than the APA, 5 U.S.C. § 704. The DFC was not required to engage in notice and comment before issuing the challenged rule, because the rule is exempt from notice and comment based on the statutory exemption for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," 5 U.S.C. § 553(b)(3)(A). Finally, the DFC correctly concluded that it is not covered by the Sunshine Act because fewer than half of the members of its Board of Directors are appointed to the Board by the President with confirmation by the Senate. The plaintiffs' contrary interpretation of the Sunshine Act is foreclosed by the D.C. Circuit's binding decision in *Symons v. Chrysler Corp. Loan Guarantee Board*, 670 F.2d 238 (D.C. Cir. 1981).

# BACKGROUND

## I.     The Government in the Sunshine Act

The Government in the Sunshine Act, 5 U.S.C. § 552b, requires, subject to certain specified exemptions, that "every portion of every meeting of an agency . . . be open to public observation." *Id.* § 552b(b). The statute also establishes procedural requirements to ensure public notice of agency meetings and proper application of the statutory exemptions. *See Nat. Res. Def. Council, Inc. v. Nuclear Regul. Comm'n*, 216 F.3d 1180, 1182 (D.C. Cir. 2000) (discussing *id.* § 552b(d)–(f)).

"However, neither the openness requirement, nor the related procedural requirements, are triggered unless the governmental entity at issue is an 'agency,' and unless the gathering in question is a 'meeting' of that agency," as defined under the statute. *Id.*

As pertinent here, the term "agency" has a very specific meaning under the Act. It means an Executive Branch authority or independent regulatory agency "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." *Id.* (quoting 5 U.S.C. § 552b(a)(1)).

The Sunshine Act requires each covered agency to promulgate regulations implementing its obligations under the Sunshine Act. *See* 5 U.S.C. § 552b(g). The Sunshine Act also contains provisions for judicial enforcement of its terms: Under § 552b(g), a person may file a civil action in the District Court for the District of Columbia to require an agency to promulgate compliant regulations or may bring a proceeding in the Court of Appeals for the District of Columbia to challenge the adequacy of existing regulations. *Id.* Under § 552b(h)(1), a person may file a civil action to enforce the requirements of the statute in connection with a meeting. *Id.* § 552b(h)(1); *see Nat. Res. Def. Council, Inc.*, 216 F.3d at 1190 (explaining that § 552b(h)(1) pertains to "suits

charging violations of the Act with respect to specific agency meetings"). Finally, under § 552b(h)(2), a federal court conducting judicial review of an agency action under some other applicable law may "inquire into violations by the agency of the requirements of [the Sunshine Act] and afford such relief as it deems appropriate." 5 U.S.C. § 552b(h)(2). The D.C. Circuit has held that relief under § 552b(h)(2) generally should consist of requiring release of information and should not entail invalidating the agency action. *See Pan Am. World Airways, Inc. v. Civ. Aeronautics Bd.*, 684 F.2d 31, 36 (D.C. Cir. 1982) (per curiam).

## II.    The U.S. International Development Finance Corporation

The Better Utilization of Investments Leading to Development (BUILD) Act of 2018, Pub L. No. 115-254, div. F, 132 Stat. 3186, 3485 (codified at 22 U.S.C. §§ 9601–9689), established the U.S. International Development Finance Corporation (DFC), combining the Overseas Private Investment Corporation (OPIC) and the Development Credit Authority (DCA) office of the U.S. Agency for International Development (USAID).

The BUILD Act specified that "[c]ompleted administrative actions" of OPIC, including "rules" and "regulations," would "continue in effect according to their terms until amended, modified, superseded, terminated, set aside, or revoked in accordance with law by an officer of the United States or a court of competent jurisdiction, or by operation of law." 22 U.S.C. § 9686(a)(1). Accordingly, after the enactment of the BUILD Act, the DFC assumed OPIC's existing rules. 84 Fed. Reg. 37,751 (Aug. 2, 2019).

On April 13, 2020, the DFC published a notice in the Federal Register explaining that although its predecessor OPIC had qualified as an "agency" under the Sunshine Act, the DFC does not, because of how the DFC is structured under the BUILD Act. 85 Fed. Reg. 20,423 (Apr. 13, 2020). More specifically, the BUILD Act specified that the DFC Board of Directors would consist of nine members, four of whom would be appointed to the Board by the President with

the advice and consent of the Senate. 22 U.S.C. § 9613(b)(2)(A). Because fewer than half of the members of the DFC Board are "appointed to such position"—that is, to their Board positions— "by the President with the advice and consent of the Senate," 5 U.S.C. § 552b(a)(1), the DFC is not an "agency" under the Sunshine Act. The DFC further noted that it had consulted with the Office of Legal Counsel (OLC) in the Department of Justice, and OLC "concur[red] with DFC in this determination," which was consistent with longstanding OLC interpretation of the Sunshine Act and the D.C. Circuit's decision in *Symons v. Chrysler Corp. Loan Guarantee Board*, 670 F.2d 238 (D.C. Cir. 1981). 85 Fed. Reg. at 20,423. The DFC accordingly removed the OPIC Sunshine Act regulations. *Id.*

Although it is not governed by the Sunshine Act, the DFC has taken other steps to ensure transparency in its operations. The BUILD Act requires the DFC Board to hold at least two public hearings per year, *see* 22 U.S.C. § 9613(c), and provide public notification for certain projects, *see* 22 U.S.C. § 9671(e)(2). The DFC board held two public hearings during 2020 after the removal of the OPIC Sunshine Act regulations. It also has held one public hearing so far during 2021, on June 9, 2021. Representatives of two of the plaintiff organizations in this case, Friends of the Earth and the Center for International Environmental Law, made presentations at that hearing. *See* U.S. Int'l Dev. Fin. Corp., Public Hearing of the DFC Board of Directors, https://www.dfc.gov/sites/default/files/media/documents/Public%20Hearing%20-%20Agenda %20-%2006-09-2021.pdf. The DFC also regularly posts project information on its public Web site. It adopted a Public Engagement Policy in December 2020 and has formed a data working group to explore ways to improve transparency and better engage with stakeholders. It is also in the process of establishing a stakeholder outreach division in its Office of External Affairs to

better engage civil society and other key stakeholders. To this end, DFC anticipates filling a stakeholder engagement position in the near future.

## III.     This litigation

Plaintiffs Center for Biological Diversity, Friends of the Earth, and Center for International Environmental Law filed this action against the DFC on June 2, 2021. The complaint challenges the DFC's April 13, 2020, rule, asserting claims under the Sunshine Act and the APA and seeking declaratory and injunctive relief. Compl. for Declaratory and Injunctive Relief ¶¶ 58–71 and at 15–16, ECF No. 1. The plaintiffs contend that the challenged rule is invalid because the DFC did not provide notice and an opportunity for public comment before issuing it, *see* Compl. ¶¶ 58–61; that the challenged rule is contrary to the Sunshine Act, *see* Compl. ¶¶ 62–66; and that the DFC is required to promulgate Sunshine Act regulations, *see* Compl. ¶¶ 67–71.

On July 8, 2021, the plaintiffs filed five declarations accompanied by attachments. Decl. of William J. Snape, III, ECF No. 7; Decl. of Sarah Uhlemann, ECF No. 7; Decl. of Kate DeAngelis, ECF No. 7; Decl. of Doug Norlen, ECF No. 7; Decl. of Carla Garcia Zendejas, ECF No. 7. These declarations were not attached to any motion or other document, and the plaintiffs did not file an amended complaint or a motion to supplement their complaint under Rule 15 of the Federal Rules of Civil Procedure.

## ARGUMENT

## I.     Legal standards applicable to a motion to dismiss

The party that seeks to invoke federal court jurisdiction—in this case, the plaintiffs—bears the burden of establishing jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a defendant asserts that the allegations in the plaintiff's complaint are legally insufficient to invoke the court's jurisdiction, the court considers the same materials

that it would consider on a motion to dismiss for failure to state a claim. *See Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 93 (D.C. Cir. 2002); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). This means that the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

    To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote omitted) (citations omitted); *see also Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations."). The rules of pleading require factual allegations "plausibly suggesting," and "not merely consistent with," the elements of a valid claim for relief. *Bell Atl. Corp.*, 550 U.S. at 557. As noted above, a court considers "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *see also Tellabs, Inc.*, 551 U.S. at 322 (2007).

II.    **The complaint fails to meet the jurisdictional requirements of standing and ripeness because the plaintiffs' challenge is not tied to any specific request for information.**

A.    **The plaintiffs cannot establish standing because their challenge is not tied to any specific request for information.**

Article III of the Constitution restricts the subject matter jurisdiction of the federal courts to specific "'cases' and 'controversies'" and prevents courts from taking action in matters better suited to legislative or executive action. *Allen v. Wright*, 468 U.S. 737, 750 (1984). One aspect of the "case or controversy" limitation is the requirement of "standing," which requires the plaintiff to establish three elements:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc.*, 528 U.S. at 180–81. Standing is a constitutional requirement, and the plaintiff must meet the requirements of standing even when Congress has specified that any person may bring suit to enforce the requirements of a statute. *See TransUnion LLC v. Ramirez*, No. 20-297, 2021 WL 2599472, at *8–9 (U.S. June 25, 2021).

The plaintiffs in this case have not adequately alleged an "injury in fact" because the plaintiffs are not challenging the denial of any request for access to specific agency records or meetings. Instead, the plaintiffs seek to challenge the DFC's interpretation of the Sunshine Act in the abstract. But "[u]nder Article III, federal courts do not adjudicate hypothetical or abstract disputes" and "do not possess a roving commission to publicly opine on every legal question." *Id.* at *6.

Lack of access to government information can support standing in circumstances where the plaintiffs claim they "sought and were denied specific agency records." *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *see also Friends of Animals v. Jewell*, 828 F.3d 989,

992 (D.C. Cir. 2016) ("A plaintiff suffers sufficiently concrete and particularized informational injury where the plaintiff alleges that: (1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure."). But it is not enough for the plaintiffs to allege that an agency failed to publish information or adopted a policy of nondisclosure; the plaintiffs must establish that they actually requested and were denied specific records. For example, in *Prisology, Inc. v. Federal Bureau of Prisons*, 852 F.3d 1114 (D.C. Cir. 2017), the plaintiff asserted that the agency had failed to make records electronically available as required by subsection (a)(2) of the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(2). *See Prisology*, 852 F.3d at 1115–16. That provision, like the Sunshine Act, requires federal agencies to affirmatively disclose information to the public even without a request. *See* 5 U.S.C. § 552(a)(2). Nevertheless, the court held that the plaintiff could not establish informational injury from the agency's failure to publish records because the plaintiff had not requested any specific records. *See Prisology*, 852 F.3d at 1117; *see also Ctr. for Biological Diversity v. Haaland*, 849 F. App'x 2, 3–4 (D.C. Cir. 2021) (unpublished per curiam decision) (holding that the plaintiff failed to establish standing because it did not identify a specific denial of access to information).

In this case, the plaintiffs have not alleged that they requested and were denied access to government records or meetings. Instead, they allege that they have attended OPIC and DFC meetings in the past and fear being denied access to information in the future. Compl. ¶¶ 5–7, 66, 71. The D.C. Circuit recently held that a petitioner lacked standing under similar circumstances in *Union of Concerned Scientists v. U.S. Department of Energy*, 998 F.3d 926 (D.C. Cir. 2021). The petitioner, a public interest organization, sought to challenge an agency rule for categorizing

information. Like the plaintiffs in this case, the organization claimed that it frequently sought information from the agency and asserted that the rule threatened its future access to information. *Compare id.* at 929 (describing the petitioner's claims of injury) *with* Compl. ¶¶ 5–7, 66, 71. But the court held that these assertions were too speculative to support standing, since it was yet to be seen whether application of the rule would ultimately result in any denial of access to information. *See Union of Concerned Scientists*, 998 F.3d at 930–31. The plaintiffs' complaint in this case fails for the same reason.

The plaintiffs also allege that they were injured because the DFC did not afford them notice and an opportunity to comment on the removal of the OPIC Sunshine Act regulations. Compl. ¶ 61. But lack of an opportunity for comment is not the kind of injury that can support standing. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).

The declarations submitted by the plaintiffs, *see supra* p. 5, do not change the analysis. First of all, the Court should not even consider the declarations. The declarations were not attached to any proper filing, and the plaintiffs have not amended or supplemented their complaint to incorporate any matters stated in the declarations. *See Baisden v. Barr.*, No. 19-cv-3105 (KBJ), 2020 WL 6118181, at *4 (D.D.C. Oct. 16, 2020) (holding that the plaintiff could not amend his complaint through a declaration); *Mattiaccio v. DHA Grp., Inc.*, 908 F. Supp. 2d 136, 139 (D.D.C. 2012) (same). And because the DFC is contesting whether the complaint is legally sufficient to invoke the court's jurisdiction—a "facial" challenge to jurisdiction—the Court should not consider materials outside the complaint. A court considers evidence outside the complaint only when the defendant has disputed the factual basis for

jurisdiction—a "factual" challenge to jurisdiction. *See Feldman v. FDIC*, 879 F.3d 347, 351

(D.C. Cir. 2018); *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir.

2000). Moreover, the Declaration of William J. Snape, III, confirms that the plaintiffs still are not

seeking relief in connection with any specific request for agency records or any specific agency

meeting. *See* Decl. of William J. Snape, III ¶ 8 ("Plaintiffs are not seeking injunctive relief at this

time . . . .").

**B.      The plaintiffs also cannot meet the jurisdictional requirement of ripeness.**

For the same reasons, the plaintiffs cannot meet the jurisdictional requirement of

ripeness. A claim is not ripe if it depends on "contingent future events that may not occur as

anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020)

(quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). Ripeness overlaps with the "injury-

in-fact" requirement of standing. *See id.*; *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S.

118, 128 n.8 (2007) (recognizing that in some cases, "standing and ripeness boil down to the

same question"); *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013)

(noting that a plaintiff that does not face an "imminent or certainly impending injury" cannot

establish either standing or ripeness). Because the plaintiffs have not identified a specific denial

of access to records or meetings, their challenge is not ripe. The circumstances of this case are

similar to *National Park Hospitality Ass'n v. Department of the Interior*, 538 U.S. 803 (2003),

where the Supreme Court considered a challenge to an agency regulation that declared that

certain types of contracts were not governed by the Contract Disputes Act. The Court found that

the plaintiff's challenge was not ripe because the plaintiff did not present any dispute concerning

a particular contract. *See id.* at 808–12.

**II.    The complaint does not state a claim under either the APA or the Sunshine Act.**

**A.    The plaintiffs cannot bring claims under the APA because the judicial review provisions of the Sunshine Act provide an adequate remedy.**

The plaintiffs cannot bring claims under the APA because the Sunshine Act provides its own specialized judicial review provisions that Congress intended as the route for enforcing the Sunshine Act.

The APA limits review to cases in which "there is no other adequate remedy in a court." 5 U.S.C. § 704; *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). Thus, when another statute provides an adequate remedy, a plaintiff cannot obtain judicial review under the APA. This limitation "reflects Congress' judgment that 'the general grant of review in the APA' ought not 'duplicate existing procedures for review of agency action' or 'provide additional judicial remedies in situations where Congress has provided special and adequate review procedures.'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1244 (D.C. Cir. 2017). The other remedy does not need to be precisely equivalent to judicial review under the APA; it only needs to be "adequate." *See Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009) ("[T]he alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the same genre." (quoting *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 396 F.3d 1265, 1272 (D.C. Cir. 2005))); *accord Citizens for Resp. & Ethics in Wash.*, 846 F.3d at 1244–45.

The D.C. Circuit has held, for example, that claims concerning agency compliance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, cannot proceed under the APA because FOIA contains its own specialized judicial review procedures. As the court explained, "the creation of both agency obligations and a mechanism for judicial enforcement in the same legislation suggests that FOIA itself strikes the balance between statutory duties and judicial

11

enforcement that Congress desired." *Citizens for Resp. & Ethics in Wash.*, 846 F.3d at 1245; *see also Elec. Priv. Info. Ctr. v. IRS*, 910 F.3d 1232, 1244 (D.C. Cir. 2018).

The Sunshine Act is very similar to FOIA and, like FOIA, defines agency obligations and establishes procedures for judicial enforcement of those obligations. Although these procedures do not precisely mirror the APA, they "offer[] relief of the same genre," *Garcia*, 563 F.3d at 522. The Sunshine Act procedures permit suits to compel publication of Sunshine Act regulations; actions in the Court of Appeals challenging the adequacy of Sunshine Act regulations; actions for enforcement of the Sunshine Act through declaratory or injunctive relief in connection with specific meetings; and a mechanism for requiring release of additional information in the course of a challenge to agency action. *See supra* pp. 2–3. This quiver of procedures provides an adequate remedy for purposes of § 704. Accordingly, the plaintiffs cannot bring claims under the APA.

**B.    The DFC's removal of obsolete OPIC regulations did not require notice and comment.**

Even if the plaintiffs could rely on the APA, their claims under the APA would fail. The DFC was not required to provide for notice and comment before removing OPIC's Sunshine Act regulations, because notice and comment are not required for rules of "agency organization, procedure, or practice."

The APA generally requires agencies to provide notice and an opportunity for comment before issuing or withdrawing a substantive rule. *See* 5 U.S.C. § 553; *id.* § 551(5) (specifying that "rule making" includes "amending[] or repealing a rule"). But those requirements are inapplicable to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* § 553(b)(3)(A).

The DFC's removal of OPIC's obsolete regulations was a matter of "agency organization, procedure, or practice" for which notice and comment were not required. "The 'critical feature' of a procedural rule 'is that it covers agency actions that do not themselves alter the rights or interests of parties, although it may alter the manner in which the parties present themselves or their viewpoints to the agency.'" *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (quoting *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 280 (D.C. Cir. 2000)). Sunshine Act regulations—or the removal of Sunshine Act regulations—pertain to how the agency will conduct proceedings and thus qualify as procedural rules. *Cf. Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641 (D.C. Cir. 2002) (holding that the agency's policy of limiting a search for documents responsive to a FOIA request to documents created up to the date of the request was a rule of agency organization, procedure, or practice for which notice and comment were not required); Richard K. Berg et al., An Interpretive Guide to the Government in the Sunshine Act 174 (2d ed. 2005) (stating that because Sunshine Act regulations "are 'rules of agency organization, procedure or practice' within section 553(b)(A), the APA does not require the agencies to follow notice-and-comment procedures in amending them").

While the DFC's removal of the obsolete OPIC regulations is best categorized as a matter of "agency organization, procedure, or practice," it could also be considered exempt from notice and comment as an interpretive rule or general statement of policy. The DFC's action was based entirely on its interpretation of the Sunshine Act's definition of "agency" in 5 U.S.C. § 552b(a)(1). The DFC does not have, and does not claim to have, any special authority to decide what that provision means; rather, the DFC simply stated what it believes the statute requires. In that sense, it is better understood as an interpretive rule or a general statement of policy than as a legislative or substantive rule. *See Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 83 (D.C. Cir.

2020) (distinguishing legislative rules from interpretive rules by explaining that a legislative rule is based on "delegated legislative power" while an interpretive rule "derive[s] a proposition from an existing document, such as a statute" (alteration in original)); *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 17–18 (D.C. Cir. 2019) (per curiam) (similarly explaining that a legislative rule is based on "delegated legislative power," while an interpretive rule is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers").

Thus, the DFC's action was exempt from the notice and comment requirements of the APA based on the exemption for "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."

      **C.**    **Even if notice and comment had been required, the failure to provide notice and comment was harmless.**

Even if the plaintiffs could bring a claim under the APA, and even if notice and comment were required, the plaintiffs still could not prevail, because the failure to provide notice and comment would amount to harmless error.

The APA incorporates an "administrative law . . . harmless error rule," which means a plaintiff cannot succeed on an APA claim unless it shows that it suffered some harm from the error it complains of. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2385 (2020) (alteration in original) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659–60 (2007)). The D.C. Circuit has held that failure to provide notice and comment amounts to harmless error when the agency's chosen course was the only available option, such that notice and comment could not have made a difference. *See Sheppard v. Sullivan*, 906 F.2d 756, 762 (D.C. Cir. 1990) (holding that, because the agency's approach was "the only reasonable one," any failure to provide notice and comment was harmless).

This case is similar to *Hadson Gas Systems, Inc. v. FERC*, 75 F.3d 680 (D.C. Cir. 1996), in which a petitioner challenged an agency's removal of regulations that had been made obsolete by amendments to the governing statute. The D.C. Circuit held that any failure to provide notice and comment was harmless because Congress had already "pulled the rug out from under" the regulations. *Id.* at 683. In this case, as in *Hadson Gas Systems, Inc.*, the agency removed regulations made obsolete by Congressional action—in this case, the decision by Congress to establish the DFC with a different structure from its predecessor agency, OPIC. As explained further in section II.D below, the DFC's conclusion that it is not subject to the Sunshine Act was compelled by the terms of the Sunshine Act as interpreted by the D.C. Circuit. The DFC could not have reached any other conclusion, and thus any failure to provide notice and comment was harmless.

**D.     The plaintiffs' claims fail on the merits because the DFC is not an "agency" under the Sunshine Act.**

Whether under the APA or the Sunshine Act, the plaintiffs' claims also fail on the merits because, for the reasons the DFC explained in its April 30, 2020, notice, the DFC is not an "agency" under the Sunshine Act.

The term "agency" under the Act means an Executive Branch authority or independent regulatory agency "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." 5 U.S.C. § 552b(a)(1). Under the BUILD Act, the DFC Board of Directors has nine members. Only four members—less than a majority—are appointed to the Board by the President with the advice and consent of the Senate. 22 U.S.C. § 9613(b)(2)(A). Accordingly, the DFC is not an "agency" under § 552b(a)(1).

The plaintiffs appear to contend that the DFC is subject to the Sunshine Act because one of the remaining five members of the DFC Board is the Chief Executive Officer of the DFC, who is appointed by the President with the advice and consent of the Senate. *See* Compl. ¶¶ 11, 13, 44–45, 50–51; *see also* 22 U.S.C. § 9613(b)(2)(A)(i); *id.* § 9613(d)(1). But the plaintiffs' argument is contradicted by the D.C. Circuit's decision in *Symons v. Chrysler Corp. Loan Guarantee Board*, 670 F.2d 238 (D.C. Cir. 1981). In *Symons*, the D.C. Circuit held that the phrase "appointed *to such position*" in § 552b(a)(1) means appointed *to a board position*. *See Symons*, 670 F.2d at 241. A member who serves on a board *ex officio* by virtue of holding some other appointment does not count. Thus, even though the board at issue in *Symons* consisted entirely of high-ranking officials appointed to their positions by the President and confirmed by the Senate, "they were not so appointed to their *Board* positions," *id.* at 240, and thus the board was not an "agency" under the Sunshine Act. *Symons* plainly precludes counting the Chief Executive Officer of the DFC as a member "appointed to such position by the President with the advice and consent of the Senate."

Thus, the plaintiffs do not state a valid claim under either the APA or the Sunshine Act.

### E.     Even if the DFC were subject to the Sunshine Act, the only permissible relief would be an order requiring the DFC to adopt Sunshine Act regulations.

Even if the DFC were subject to the Sunshine Act, the only relief available in this action would be an order requiring the DFC to adopt Sunshine Act regulations. The plaintiffs' other requests for relief would have to be dismissed.

As discussed above, the Sunshine Act authorizes four basic types of challenges: (1) A person may bring an action to require an agency to publish Sunshine Act regulations, *see* 5 U.S.C. § 552b(g); (2) a person may bring an action in the Court of Appeals to challenge the adequacy of an agency's regulations, *see id.*; (3) a person may challenge an agency's compliance

with the Sunshine Act in connection with a particular meeting, *id.* § 552b(h)(1), *see Nat. Res. Def. Council, Inc.*, 216 F.3d at 1191 (explaining that § 552b(h)(1) pertains to "suits charging violations of the Act with respect to specific agency meetings"); and (4) a person challenging other agency action may raise a dispute about whether the agency complied with the Sunshine Act in taking that action, 5 U.S.C. § 552b(h)(2).

Even if the DFC were subject to the Sunshine Act, the plaintiffs could not proceed with any challenge of the second, third, or fourth type, because required elements are missing: The plaintiffs are not challenging the adequacy of existing regulations—the DFC has no Sunshine Act regulations. And if the challenged rule providing that the DFC is not subject to the Sunshine Act could be construed as Sunshine Act regulations, a claim challenging the adequacy of those regulations would have to be brought in the Court of Appeals; this Court would lack jurisdiction over such a claim. The plaintiffs are not challenging the DFC's compliance with the Sunshine Act in connection with a specific meeting. And the plaintiffs are not challenging the DFC's compliance with the Sunshine Act in connection with another agency action.

As discussed above, the DFC is not an "agency" under the Sunshine Act. But if it were, the only type of claim the plaintiffs could bring under the Sunshine Act would be a claim seeking to require the DFC to publish Sunshine Act regulations under § 552b(g). All other requests for relief should be dismissed.

## CONCLUSION

Because the plaintiffs do not allege a concrete and particularized injury that can support standing, and because the plaintiffs do not state any valid claim under either the APA or the Sunshine Act, the Court should dismiss this action.

Date: July 9, 2021                          Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Acting Assistant Attorney General

                                            MARCIA BERMAN
                                            Assistant Branch Director

                                            /s/ JAMES C. LUH
                                            JAMES C. LUH
                                            Senior Trial Counsel
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L St NW
                                            Washington DC 20530
                                            Tel: (202) 514-4938
                                            E-mail: James.Luh@usdoj.gov
                                            Attorneys for Defendant