# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,

FRIENDS OF THE EARTH,

   and

CENTER FOR INTERNATIONAL
ENVIRONMENTAL LAW,

       Plaintiffs,

   v.

UNITED STATES INTERNATIONAL
DEVELOPMENT FINANCE
CORPORATION,

       Defendant.

Civil Action No. 1:21-cv-01491-CRC

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

SUMMARY OF ARGUMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ....................................................................................................................... 5

    I.     Plaintiffs clearly meet the judicial standards developed under
          Rules 12(b)(1) and 12(b)(6) ............................................................... 5

    II.    Plaintiffs clearly possess standing based on allegations in the
          Complaint and as amplified by Plaintiffs' declarations. ....................... 6

    III.   Plaintiffs' claims could not be more ripe for judicial review ............... 10

    IV.   APA review of Plaintiffs' claims is appropriate and necessary ........... 13

    V.    The DFC's Final Rule exempting the agency from Congressional
          Sunshine Act obligations requires notice and comment ...................... 16

          A.    The DFC's Final Rule exempting itself from mandatory
                Sunshine Act compliance is a legislative rule........................... 18

          B.    The failure to provide notice and comment on the DFC's
                Final Rule exempting the agency from the Sunshine Act was
                not a mere harmless error ........................................................ 22

          C.    The DFC's open meeting provisions are not a legal substitute
                for Sunshine Act compliance ................................................... 25

    VI.   Plaintiffs will likely prevail on the merits because the DFC is an agency
          subject to the Sunshine Act ............................................................... 27

    VII.  Plaintiffs' requested relief is reasonable and appropriate ................... 30

CONCLUSION.................................................................................................................. 32

# TABLE OF AUTHORITIES

**Cases**

*Allegheny Def. Project v. FERC*,
 964 F.3d 1 (D.C. Cir. 2020) ............................................................................. 29

*\*Allina Health Servs. v. Sebelius*,
 746 F.3d 1102 (D.C. Cir. 2014) .................................................................. 22, 23

*Am. Fed'n of Labor v. Nat'l Lab. Rel. Bd.*,
 466 F.Supp.3d 68 (D.D.C. 2020) ..................................................................... 18

*Am. Freedom Law Ctr. v. Obama*,
 821 F.3d 44 (D.C. Cir. 2016) ............................................................................. 6

*Am. Mining Cong. v. Mine Safety & Health Admin.*,
 995 F.2d 1106 (D.C. Cir. 1993) .................................................................. 18, 19

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................... 5

*Atl. States Legal Found. v. EPA*,
 325 F.3d 281 (D.C. Cir. 2003) ......................................................................... 11

*Banneker Ventures, LLC v. Graham*,
 798 F.3d 1119 (D.C. Cir. 2015) ..................................................................... 5, 6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ....................................................................................... 5, 6

*\*Bennett v. Spear*,
 520 U.S. 154 (1997) ..................................................................................... 8, 14

*Bowen v. Massachusetts*,
 487 U.S. at 879 (1988) ..................................................................................... 16

*Braniff Airways v. Civ. Aeronautics Bd.*,
 379 F.2d 453 (D.C. Cir. 1967) ......................................................................... 22

*Chamber of Com. of the U.S. v. Occupational Safety & Health Admin.*,
 636 F.2d 464 (D.C. Cir. 1980) ......................................................................... 19

*Chamber of Com. v. U.S. Dep't of Lab.*,
 174 F.3d 206 (D.C. Cir. 1999) ......................................................................... 16

*\*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
 467 U.S. 837 (1984) ......................................................................................... 29

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979) .......................................................................... 18

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*,
846 F.3d 1235 (D.C. Cir. 2017) ....................................................... 15

*Clarian Health W., LLC v. Hargan*,
878 F.3d 346 (D.C. Cir. 2017) ................................................... 18, 21

*Elec. Privacy Info. Ctr. v. Internal Revenue Serv.*,
910 F.3d 1232 (D.C. Cir. 2018) ....................................................... 15

*\*Env't Def. Fund, Inc. v. Gorsuch*,
713 F.2d 802 (D.C. Cir. 1983) ......................................................... 20

*FBME Bank Ltd. v. Lew*,
209 F. Supp. 3d 299 (D.D.C. 2016) ................................................. 17

*Fourth Branch Assocs. (Mechanicville) v. FERC*,
253 F.3d 741 (D.C. Cir. 2001) ......................................................... 12

*\*Friends of the Earth, Inc. v. Laidlaw Env't Servs.*,
528 U.S. 167 (2000) ........................................................................... 7

*Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
920 F.3d 1 (D.C. Cir. 2019) ............................................................. 17

*Hadson Gas Systems v. FERC*,
75 F.3d 680 (D.C. Cir. 1996) ........................................................... 23

*Howard v. Gutierrez*,
474 F. Supp. 2d 41 (D.D.C. 2007) ..................................................... 5

*Jenkins v. McKeithen*,
395 U.S. 411 (1969) ........................................................................... 5

*Jerome Stevens Pharms., Inc. v. FDA*,
402 F.3d 1249 (D.C. Cir. 2005) ......................................................... 6

*Kessler v. F.C.C.*,
326 F.2d 673 (D.C. Cir. 1963) ......................................................... 18

*\*Kisor v. Wilkie*,
___ U.S. ___, 139 S. Ct. 2400 (2019) ............................................. 17

*Loughlin v. United States*,
230 F. Supp. 2d 26 (D.D.C. 2002) ..................................................... 5

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ........................................................................ 8

*\*Mendoza v. Perez,*
   754 F.3d 1002 (D.C. Cir. 2014) ................................................ 16, 17

*\*Nat. Res. Def. Council v. Wheeler,*
   955 F.3d 68 (D.C. Cir. 2020) ........................................................ 23

*\*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
   440 F.3d 459 (D.C. Cir. 2006) ...................................................... 11

*Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Sullivan,*
   979 F.2d 227 (D.C. Cir. 1992) ...................................................... 19

*Nat'l Mining Ass'n v. McCarthy,*
   758 F.3d 243 (D.C. Cir. 2014) ...................................................... 21

*Nat'l Park Hosp. Ass'n v. Dep't of Interior,*
   538 U.S. 803 (2003) ........................................................ 10, 12, 13

*Nat'l Parks Conservation Ass'n v. Semonite,*
   916 F.3d 1075 (D.C. Cir. 2019) .................................................... 29

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) ...................................................................... 10

*PDK Lab'ys Inc. v. DEA,*
   362 F.3d 786 (D.C. Cir. 2004) ...................................................... 22

*Perez v. Mortgage Bankers Ass'n,*
   575 U.S. 92 (2015) .................................................................. 17, 19

*Pickus v. U.S. Bd. of Parole,*
   507 F.2d 1107 (D.C. Cir. 1974) .................................................... 18

*\*Public Citizen v. U.S. Dep't. of Justice,*
   491 U.S. 440 (1989) ............................................................ 7, 8, 10

*Shalala v. Guernsey Mem. Hosp.,*
   514 U.S. 87 (1995) ........................................................................ 19

*Sierra Club v. EPA,*
   873 F.3d 946 (D.C. Cir. 2017) ...................................................... 20

*Skidmore v. Swift & Co.,*
   323 U.S. 134 (1944) ...................................................................... 30

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................... 6

*Sugar Cane Growers' Coop. of Fla. v. Veneman*,
   289 F.3d 89 (D.C. Cir. 2002) ................................................................... 17

*\*Symons v. Chrysler Corp. Loan Guarantee Bd.*,
   670 F.2d 238 (D.C. Cir. 1981) ........................................................ 5, 28–29

*Texas v. United States*,
   523 U.S. 296 (1998) ................................................................................ 11

*U.S. Steel Corp. v. EPA*,
   595 F.2d 207 (5th Cir. 1979) ................................................................... 22

*U.S. Telecom Ass'n v. FCC*,
   400 F.3d 29 (D.C. Cir. 2005) ................................................................... 23

*Union of Concerned Scientists v. Dep't. of Energy*,
   998 F.3d 926 (D.C. Cir. 2021) ............................................................. 8, 10

*United States v. Mead Corp.*,
   533 U.S. 218 (2000) ................................................................................ 30

*Util. Solid Waste Activities Grp. v. EPA*,
   236 F.3d 749 (D.C. Cir. 2001) ................................................................. 16

**Statutes**

5 U.S.C. §§ 551–559 .................................................................................... 1

5 U.S.C. § 552(a)(2) .................................................................................... 15

5 U.S.C. § 552b ............................................................................................ 1

5 U.S.C. § 552b(a)(1) ................................................................................... 1

5 U.S.C. § 552b(b) .......................................................................... 3, 25, 26

5 U.S.C. § 552b(b)–(f) ................................................................................ 26

5 U.S.C. § 552b(c) ................................................................................. 3, 31

5 U.S.C. § 552b(d) ..................................................................................... 31

5 U.S.C. § 552b(g) ................................................................... 5, 6, 15, 17, 30

5 U.S.C. § 552b(h) ............................................................................. *passim*

5 U.S.C. § 552b(h)(1) ................................................................................. 2, 6, 19

5 U.S.C. § 552b(h)(2) ................................................................................. 31

5 U.S.C. § 552b(k) ..................................................................................... 31

5 U.S.C. § 552b(m) .................................................................................... 31

5 U.S.C. § 553 ............................................................................... 12, 16, 24

5 U.S.C. § 553(b) ....................................................................................... 17

5 U.S.C. § 553(c) ....................................................................................... 17

5 U.S.C. § 702 ................................................................................ 5, 16, 30

5 U.S.C. § 704 ................................................................... 12, 14, 15, 16

15 U.S.C § 717r(b) ..................................................................................... 29

22 U.S.C. § 2191a(c) (repealed) ............................................................ 4, 25

22 U.S.C. § 7703(b)(6) .............................................................................. 28

22 U.S.C. § 7703(c)(3) .............................................................................. 28

22 U.S.C. §§ 9601–9689 ............................................................................. 3

22 U.S.C. § 9612(a)–(c) ............................................................................. 3

22 U.S.C. § 9612(b) .................................................................................... 3

22 U.S.C. § 9613(b) ................................................................................... 25

22 U.S.C. § 9613(b)(1)(C) ....................................................................... 4, 25

22 U.S.C. § 9613(b)(2)(A) ......................................................................... 29

22 U.S.C. § 9613(b)(2)(A)(i)–(iii) ............................................................ 28

22 U.S.C. § 9613(b)(2)(B)(i)–(ii) ............................................................. 27

22 U.S.C. § 9613(c) ........................................................................ 4, 25, 26

22 U.S.C. § 9613(d)(1)–(3) ....................................................................... 29

22 U.S.C. § 9613(e)–(g) ............................................................................ 28

**Legislative Material**

*Government in Sunshine Act: Hearings on H.R. 11656 Before the Subcomm.
 on Administrative Law and Gov't Relations of the House Committee on the
 Judiciary*, 94th Cong, 2d sess. 16 (1976) ............................................................ 29

H.R. Rep. No. 94-880 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2183 .................................. 25

S. Rep. No. 1178 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2183 ............................................. 3

S. Rep. No. 94-354 (1975) ................................................................................................. 3, 25

**Rules**

L.Cv.R. 7(a) ............................................................................................................... 12

**Federal Register Notices**

84 Fed. Reg. 6839 (Feb. 28, 2019) ................................................................................... 3

85 Fed. Reg. 12,777 (Mar. 4, 2020) ............................................................................ 2, 20

85 Fed. Reg. 20,423 (Apr. 13, 2020) ..................................................................... *passim*

**Other Authorities**

37 Op. O.L.C. (2013), 2013 WL 11105738 (O.L.C.) .................................................... 4

## SUMMARY OF ARGUMENT

This litigation challenges the decision by one federal agency, the U.S. Development Finance Corporation ("DFC" or "Defendant"), to exempt itself from the Congressional commands of the Government in the Sunshine Act ("Sunshine Act"), 5 U.S.C. § 552b, and to issue a binding and final action without any public notice and comment under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559.  This agency decision was effectuated with a Final Rule.  85 Fed. Reg. 20,423 (Apr. 13, 2020); *see* Attachment E.  Defendant agency's basis for its self-declared exemption in the Final Rule is that the Sunshine Act's board composition requirements somehow allow it to count its own chief executive officer ("CEO")[1], nominated by the President and confirmed by the Senate to be both CEO and Board member of the DFC, as somehow "outside the agency" for purposes of determining the majority agency board composition under the Sunshine Act.

Despite the pages of briefing on various justiciability theories by DFC in its Memorandum in Support of Defendant's Motion to Dismiss ("Def. Mem."), ECF No. 8-1, the only real legal dispute in this litigation is over the definition of "agency" under the Sunshine Act. 5 U.S.C. § 552b(a)(1).  Pursuant to this provision, "the term 'agency' means any agency . . . headed by a collegial body composed of two or more individual members, *a majority of whom are appointed to such position by the President with the advice and consent of the Senate . . . .*" (emphasis added).  As it relates to this litigation, if the CEO of the DFC is counted as an individual nominated by the President and confirmed by the Senate for the DFC Board, service on which is part of the CEO's statutory job description, then the "majority" of the DFC Board—

---

[1]  The current DFC CEO, Dev Jagadesan, serves in an acting capacity at present. https://www.dfc.gov/media/press-releases/dfc-announces-new-members-biden-harris-administration-leadership.

five out of nine—would clearly have been nominated and confirmed as required by the Sunshine

Act, and the DFC must comply with the Sunshine Act.  If the CEO is counted as an *ex officio*

Board officer of his own agency, then the DFC may avoid compliance with the Sunshine Act.

Instead of meaningfully resolving this precise legal issue, however, the DFC in its

Motion and Memorandum to Dismiss, ECF Nos. 8 and 8-1, erects a series of jurisdictional

fictions, all of which are wrong as a matter of law, and all of which are designed to avoid the

central issue of this case.  Meanwhile, the DFC continues to have board meetings closed to the

public, making important and costly decisions without, *inter alia*, the notice requirements,

transparency requirements, and record-keeping requirements of the Sunshine Act.

In a motion to dismiss, the burden is effectively on the mover to demonstrate why a

plaintiff cannot plausibly prevail as a matter of law based on the pleadings and any other records

before the Court.  Because Plaintiffs here can demonstrate that the Complaint presents

cognizable legal claims and can demonstrate standing, the burden is on Defendant agency to

explain why the case should not go forward with a full administrative record on competing

motions for summary judgment.  In addition, under the Sunshine Act, the burden is also on the

Defendant DFC to sustain its action.  *See* 5 U.S.C. § 552b(h)(1).  The DFC does not even attempt

to defend the legal memo cited in its Final Rule as the justification for the agency's decision.

*See* Attachment F (DFC Legal Memorandum).  Nor does the DFC mention that, or explain how,

it possessed a contrary legal opinion just a month before the Final Rule. *See* 85 Fed. Reg. 12,777

(Mar. 4, 2020) (Attachment G).

Defendant's motion to dismiss must fail as a matter of law because Plaintiffs possess

standing, because Plaintiffs have properly stated claims under both the Sunshine Act and APA

together, and because this Court possesses jurisdiction to determine whether Defendant DFC is skirting clear federal sunshine in government requirements established by Congress.

## BACKGROUND

In 2018, Congress passed the Better Utilization of Investments Leading to Development Act ("BUILD Act"), Pub. L. No. 115-254 (codified as amended at 22 U.S.C. §§ 9601–9689), which created a new agency, the U.S. Development Finance Corporation ("DFC").  22 U.S.C. § 9612(a)–(c).  The DFC modifies the existing development finance functions of the United States "to mobilize and facilitate the participation of private sector capital and skills in the economic development of less developed countries . . . in order to complement the development assistance objectives, and advance the foreign policy interests, of the United States."  22 U.S.C. § 9612(b).  The BUILD Act does not specifically address the Sunshine Act in its provisions.

The 1976 Government in the Sunshine Act requires that "every portion of every meeting" of a multi-member agency board such as the DFC "be open to public observation" with narrow exceptions.  5 U.S.C. § 552b(b)–(c).  The Sunshine Act is "founded on the proposition that the government should conduct the public's business in public."  S. Rep. No. 94-354 (1975); S. Rep. No. 1178 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2183, 2245.  Nothing in the statutory language of the BUILD Act, nor in its legislative history, reveal any intent by Congress to exempt the new agency from the Sunshine Act.  In fact, DFC's predecessor agency, the Overseas Private Investment Corporation ("OPIC") complied with the Sunshine Act.  *See, e.g.*, 84 Fed. Reg. 6839 (Feb. 28, 2019) (OPIC meeting complying with Sunshine Act).

In April 2020, DFC exempted itself from the Sunshine Act with its Final Rule that did not go through public notice and comment.  85 Fed. Reg. 20,423 (Apr. 13, 2020); *see* Attachment E.  This 2020 DFC Final Rule relies almost exclusively on non-binding policy guidance the Department of Justice developed for the Millennium Challenge Corporation

("MCC"), 37 Op. O.L.C. (2013), 2013 WL 11105738 (O.L.C.) ("MCC Legal Opinion"), which the DFC adopted wholesale.  *See* Attachment F ("DFC Legal Memo") (Letter from Liam P. Hardy, Deputy Assistant Attorney General to Kevin Turner, Vice President and General Counsel of DFC).[2]  Like the Final Rule on the Sunshine Act itself, this DFC policy guidance also did not go through public notice and comment.  Despite the fact that Plaintiffs cite and discuss these purported justifications for the DFC's action in the Complaint, Defendant does not defend nor mention either the MCC Legal Memo or the DFC Legal Memo in its filing.  *See* Compl. at ¶¶ 33–36, 51–52.

Like the organic statute for the DFC's predecessor, OPIC, 22 U.S.C. § 2191a(c) (repealed), the BUILD Act possesses a short section on public participation, which is not the same as the Sunshine Act and is not a substitute for the Sunshine Act.  One provision states the DFC Board "shall develop" a "publicly available policy" with respect to various forms of engagement "in order to provide for meaningful public participation in the Board's activities." 22 U.S.C. § 9613(b)(1)(C).  The other provision states that the DFC "Board shall hold at least two public hearings each year."  22 U.S.C. § 9613(c).  Both these provisions—one to ensure a policy of meaningful participation and the other to specify a minimum number of meetings—are complementary with the Sunshine Act and do not displace or disturb the DFC's Sunshine Act's requirements.[3]

---

[2]  It appears from this memo that the DFC has adopted all of OPIC's regulations except the Sunshine Act regulations: "In connection with the transfer of OPIC's functions, DFC adopted OPIC's administrative regulations, including regulations implementing the open-meeting requirements of the Sunshine Act," but later revoked the Sunshine Act regulations with its April 2020 Final Rule (Attachment E).  *See* DFC Legal Memo at 3 (Attachment F).

[3]  As the D.C. Circuit has further explained, "[a]lthough the idea of listing covered agencies was ultimately rejected by Congress [so as to not leave an agency inadvertently out] . . . both the Senate Report and the House Judiciary Report set forth what Congress believed was a complete list of entities that would be covered by the Sunshine Act's definition of 'agency.'  It should be

In order to compel Defendant DFC to comply with the Sunshine Act, Plaintiffs filed a Complaint in this Court on June 2, 2021, with three distinct but related causes of action. Jurisdiction in this Court was claimed under the Sunshine Act, 5 U.S.C. § 552b(g) and (h), and under the APA, 5 U.S.C. § 702.

## ARGUMENT

### I.  Plaintiffs clearly meet the judicial standards developed under Rules 12(b)(1) and 12(b)(6).

Under a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss, "the Court considers the factual allegations of the complaint in the light most favorable to the non-moving party." *Loughlin v. United States*, 230 F. Supp. 2d 26, 35 (D.D.C. 2002).  Similarly, "[f]or the purposes of a [Fed. R Civ. P. 12(b)(6)] motion to dismiss, the material allegations of the complaint are taken as admitted."  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007); *Howard v. Gutierrez*, 474 F. Supp. 2d 41, 47 (D.D.C. 2007) ("Under Rule 12(b)(6), the plaintiff's [sic] factual allegations must be presumed true and should be liberally construed in his or her favor. The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.") (citations omitted).

"At the pleading stage, [the Court] accept[s] all the well-pleaded factual allegations of the complaint as true and draw[s] all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1125 n.1 (D.C. Cir. 2015) (citing *Iqbal*, 556 U.S. at 678). "[A] well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof . . . is improbable'" and because "if there are two

---

noted that not one of the forty-seven agencies listed had a majority of *ex officio* members.  Each one had a majority of persons were appointed by the President **to the agency itself**."  *Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238, 244 (D.C. Cir. 1981) (emphasis added).

alternative explanations" if both "are plausible," that is sufficient for the case to progress. *Id.* at 1129 (quoting *Twombly*, 550 U.S. at 556; *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). A court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) (quoting *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005)).

Under the Sunshine Act, "[t]he burden is on the defendant to sustain his action." 5 U.S.C. § 552b(h)(1). In their Complaint, Plaintiffs allege three inter-related causes of action under the Sunshine Act and the APA. *See* 5 U.S.C. § 552b(g), (h). In particular, section 552b(h) of the Sunshine Act is focused on specific agency meetings, not an agency's attempt to exclude itself *writ large* from the Sunshine Act via an administrative rule with no public comment.[4]

## II.     Plaintiffs clearly possess standing based on allegations in the Complaint and as amplified by Plaintiffs' declarations.

Defendant's claim that Plaintiffs do not possess standing is wrong as a matter of fact and law. As Plaintiffs' five declarations[5] painstakingly illustrate, all three Plaintiff groups have suffered distinct, cognizable, and serious injuries in fact based upon information deprivation caused by Defendant's violation of federal law that can be easily remedied by compliance with such federal law.

---

[4] Section 552b(g) of the Sunshine Act, while focused on Sunshine Act regulations, appears on its face to apply only to agencies in existence at the time the Sunshine Act was passed in 1976. 5 U.S.C. § 552b(g). In any event, section (g) does not address the situation in this case: an agency issuing a final rule unilaterally determining it is not subject to the Sunshine Act.

[5] Defendant's objections about Plaintiffs' declarations are irrelevant. Def. Mem. at 5, 9–10. First, Plaintiffs did not seek to amend its Complaint with the filing of these declarations. *See generally* ECF Nos.7 through 7-8, which are the citations Plaintiffs use in this Memorandum. Second, there is no rule against filing declarations after the Complaint is filed but before dispositive briefing begins, especially when seeking potential settlement. Third, Plaintiffs have re-filed these declarations as part of this Memorandum in Opposition, which is also proper. Plaintiffs also believe these declarations help defeat the government's standing, ripeness, and harmless error arguments.

Article III of the Constitution requires that litigation brought in federal court be tied to specific cases and controversies.  Standing is established if a plaintiff has (1) injury in fact that is concrete and particularized; actual and imminent; and not hypothetical; (2) the injury is fairly traceable to the challenged action; and (3) it is likely that the injury will be redressed favorably. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.,* 528 U.S. 167, 180–181 (2000).  *See also cf. Public Citizen v. U.S. Dep't. of Justice*, 491 U.S. 440, 449 (1989) ("[W]hen an agency denies requests for information under the Freedom of Information Act, refusal to permit appellants to scrutinize the ABA Committee's activities to the extent FACA [the Federal Advisory Committee Act] allows *constitutes a sufficiently distinct injury to provide standing to sue*." (emphasis added)).

Defendant argues that there is no injury in fact because the Plaintiffs were not denied a request of access to specific agency records or meetings.  Def. Mem. at 7.  This is plainly false.  Not only does Plaintiffs' Complaint detail DFC meetings where the Sunshine Act was violated, ECF No. 1 at ¶ 57, but Plaintiffs' five declarations also provide ample detail of the notice, information, and materials denied to Plaintiffs by virtue of DFC's illegal actions.

For example, in the Declaration of Doug Norlen, a member and staff official of Plaintiff Friends of the Earth ("FoE"), Mr. Norlen details how DFC's behavior injured his ability to advocate on a liquified natural gas development in Mozambique, where FoE had been involved for years:

> On September 9, 2020, DFC had a board meeting that was closed to the public and was not noticed in the Federal Register because they had since claimed that the Sunshine Act did not apply to them. It was only listed on their website ten days or less before the board meeting. Since it was not in the Federal Register and not listed for a sufficient period on DFC's website, I did not find out about the board meeting until the day of. At this board meeting, the board voted on the Rovuma LNG project – a liquified natural gas development and export project in northern Mozambique. FoE has worked closely with Friends of the Earth

7

> Mozambique/Justica Ambiental on this project since 2015 and a staff member of my program has visited impacted communities, and written comments and reports analyzing the environmental and social impact assessment and other findings. Without this notification and ability to comment, DFC approved up to $1.5 billion in political risk insurance for the project despite the increasing violence, negative impacts on local communities, and massive greenhouse gas emissions.

Decl. of Doug Norlen at ¶ 7, ECF No. 7-3.  *See also* Decl. of Kate DeAngelis at ¶ 8, ECF No. 7-2. These specific allegations are much different than those in *Union of Concerned Scientists v. Department of Energy*, 998 F.3d 926, 927 (D.C. Cir. 2021), where plaintiff complained of how the agency categorized complex energy information.  This is a case where Defendant agency DFC has directly <u>denied</u> meeting access and information to Plaintiffs.  Thus, this case is virtually indistinguishable from *Public Citizen*, in which the Supreme Court held that deprivation of access to meetings and documents in the manner required by the Federal Advisory Committee Act was sufficient to establish standing.  491 U.S. at 449.

There is no doubt that Plaintiffs are injured by Defendant's actions.  This injury was and is caused by Defendant's violations of the Sunshine Act and APA, and that this injury can only be redressed by the Defendant finally complying with the Sunshine Act and APA as Congress intended.  "[T]here [must] be a causal connection between the injury and the conduct complained of [and] the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Bennett v. Spear,* 520 U.S. 154, 167 (1997).  With regard to redressability, "it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 561 (1992) (internal quotation marks omitted).  Both these prongs of standing have been easily met by Plaintiffs here.

While the abridgement of a statutory right to information alone is sufficient to confer standing, as the Complaint and declarations demonstrate, Plaintiffs have additionally been

injured by an inability to prepare for DFC meetings, which has stopped them from being able to adequately represent their interests and their members' interests. *See, e.g.,* Decl. of Sarah Uhlemann, ECF No. 7-1 (noting the harms and ramifications caused by the change of practice and procedures from OPIC to DFC); *see also* Decl. of William Snape, ECF No. 7, ¶ 4–8; ECF Nos. 7-5 through 7-8 (Attachments A–D highlighting DFC meetings without Sunshine Act compliance and specific DFC projects and issues that were impacted, thus harming Plaintiffs). The Declaration of Carla Zendejas from Plaintiff Center for International Environmental Law ("CIEL") is particularly illustrative of this dynamic:

> [T]his lack of transparency or opportunity for public engagement with the institution has impaired CIEL's ability to track DFC's monitoring of the Alto Maipo Project in Chile and fracking projects in Argentina, as well as to identify and track decision-making regarding projects under consideration that have significant social, environmental, and human rights impacts. For example, without prior public notice and ability to comment, in September 2020, the DFC Board approved political risk insurance for the Rovuma LNG project in Mozambique—an offshore gas development that threatens to adversely affect local communities, livelihoods, ecosystems, and the global climate—despite mounting political instability and violence in the Cabo Delgado region where the gas buildout is occurring. My CIEL colleagues and I have continued to engage DFC, through meetings with DFC staff on December 15, 2020 and March 31, 2021. At those meetings, we have expressed concern over the need to ensure that best practice and international standards on transparency, participation, and proper stakeholder engagement are incorporated into DFC's policies. In addition to the adoption of environmental and social governance standards at the new institution, CIEL also stressed that DFC's new accountability mechanism should maintain a higher level of transparency and disclosure of information, in line with best practice at other accountability mechanisms. Since the start of 2021, CIEL and partners have provided a series of policy recommendations for the DFC's new accountability mechanism outlining the need for robust commitments on transparency and the disclosure of information about the mechanism's procedures, operations and cases. The lack of notice of DFC Board meetings, public access to Board meetings, or minutes and/or transcripts of those Board meetings hampers our ability to pursue the adoption or implementation of our recommendations and to ensure that those affected by OPIC's operations have access to information about, and opportunities for meaningful participation in, its decision-making. In order to effectively carry out my role at CIEL, I need public notice of upcoming DFC meetings and open access to those meetings and deliberations. I relied on proper notice of and access to OPIC meetings in the past, as mandated by the

> Sunshine Act.  As a consequence of DFC's failure to abide the same law and
> requirements, I do not know when meetings are happening, and am deprived of an
> opportunity to provide comments to the Board of DFC and to relay questions on
> behalf of partners representing communities affected by DFC-supported projects.

Decl. of Carla Zendejas ¶ 18–21, ECF No. 7-4.  If the DFC was required to comply with the

Sunshine Act, Plaintiffs would obtain all the information to which they are entitled and be able to

adequately represent and advocate for their legal rights and interests.  This is more than sufficient

for standing, particularly as this early stage of litigation.[6]

## III.     Plaintiffs' claims could not be more ripe for judicial review.

Ripeness is a justiciability doctrine rooted in prudential and constitutional considerations.

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003).  The ripeness requirement

is two-pronged: it requires (1) that the plaintiff face a hardship, and (2) that the issues are fit for

judicial review.  *Id.*  Plaintiffs easily meet both prongs of this test.

Hardship occurs when a final agency action "grant[s], withhold[s], or modif[ies] any

formal legal licenses, power or authority; . . . subject[s] anyone to any civil or criminal liability;"

or creates "legal rights or obligations" could qualify as a practical harm to a party.  *Ohio*

*Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998).  In the D.C. Circuit, courts consider

"not whether [a party has] suffered any direct hardship, but rather whether *postponing* judicial

review would impose an undue burden on [it] or would benefit the court."  *Nat'l Ass'n of Home*

---

[6] *Union of Concerned Scientists*, *supra*, is, contrary to the government's contention, readily
distinguishable.  *See* ECF No. 8-1 at 8-9.  In addition to the fact that the petitioner in that case did
not assert the wholesale deprivation of a statutory right to information, as in this case and *Public
Citizen*, the Court of Appeals there held that it was entirely "speculative" whether the regulation
at issue would be implemented in such a manner as to how a concrete bearing on the petitioner's
access to information. *Union of Concerned Scientists*, 998 F.3d at 929.  Here, as set forth in the
Complaint and the declarations, there is nothing speculative about the present and ongoing
deprivation of information as a consequence of the agency's refusal to comply with the Sunshine
Act.

*Builders v. U.S. Army Corps of Eng'rs*, 440 F.3d 459, 464 (D.C. Cir. 2006) (internal quotations omitted) (emphasis in original).

Here, Plaintiffs have lost the ability to meaningfully engage with agency officials, or even become aware of pending decisions or actions, on projects that impact their members and partners as a result of DFC's Final Rule exempting itself from the Sunshine Act.  In *National Association of Home Builders*, the D.C Circuit held that a final rule requiring industry members to apply for permits for activities outside the scope of the agencies' authority posed a hardship because it required the industry members to adjust their conduct immediately.  *Id.*  Likewise, Plaintiffs immediately and to this day have lost access to important information that they previously utilized in their day-to-day business.  DFC's rule has forced Plaintiffs "to refrain from" conduct—attending agency meetings and commenting agency projects—that make up much of their regular advocacy work.  *See Atl. States Legal Found. v. EPA*, 325 F.3d 281, 285 (D.C. Cir. 2003) (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)).

For example, on September 9, 2020, DFC held a closed board meeting where it voted on the Rovuma LNG project.  Norlen Decl. at ¶ 7, ECF No. 7-3.  Prior to the meeting, Plaintiff Friends of the Earth had worked with impacted communities in Mozambique for at least five years.  *Id.* at ¶ 7.  DFC approved $1.5 billion in politic risk insurance despite geopolitical uncertainties and adverse environmental impacts, and Plaintiffs were voiceless and powerless.  *Id.*  Plaintiffs also cannot continue to conduct their day-to-day business as they see fit or as they have in the past because those activities—monitoring the Federal Register for timely meeting notices, attending meetings, and commenting meaningfully on protects—are no longer available to them.  *See* Norlen Decl. at ¶ 5; Zendejas Decl. at ¶ 20; DeAngelis Decl. at ¶ 5.

Further, to be fit for judicial review, the issues presented must be "purely legal" and the agency action must be final within the meaning of the APA, 5 U.S.C. § 704.  *Nat'l Park Hosp.*, 538 U.S. at 812.  Finality of an action depends on "whether the agency's position is definite and whether it has a direct and immediate effect on the day-to-day business of the parties."  *Fourth Branch Assocs. (Mechanicville) v. FERC*, 253 F.3d 741, 746 (D.C. Cir. 2001) (internal quotation marks omitted).

The Final Rule by DFC exempting itself from the Sunshine Act is a final agency action. The decision by DFC to count its CEO as an *ex officio* member of its own agency is undeniably a pure legal issue, and DFC's action exempting itself from the Sunshine Act is unquestionably final.  Further, Plaintiffs' first cause of action asks whether DFC was required to follow the notice and comment requirements of the APA, 5 U.S.C. § 553, when attempting to exempt itself from the Sunshine Act via a final rule, which is another purely legal issue.  Compl. at ¶¶ 58–61, ECF No. 1.  Indeed, each and all of the three causes of action presented in the Complaint pose legal questions that the Court can and must hear immediately.

Defendant contends that Plaintiffs' claims must not rely on contingent future events and Plaintiffs must suffer an imminent injury.  Def. Mem. at 10, ECF No. 8-1.  Defendant states that Plaintiffs have "not identified a specific denial of access" to meetings.  However, this is untrue. *See* Norlen Decl. at ¶ 7 (September 9, 2020 meeting closed without notice to public); DeAngelis Decl. at ¶ 8 (same); Zendejas Decl. at ¶¶ 17, 18, 21.

Finally, Defendant completely mischaracterizes the outcome in *National Park Hospitality*, 538 U.S. at 809–11—the only case it relies upon for this argument.  In *National*

*Park Hospitality*[7] the court found the claims unripe because the regulation in question did not create "adverse effects of a strictly legal kind," nor did the plaintiffs suffer any practical harm. *Id.* at 809–10.  The plaintiffs were able to go about their business because the NPS simply announced how it would deal with future contract disputes.  *Id.* at 810.  In addition to finding a lack hardship, the court found that further factual development would allow it to better assess the legal issues presented, when and if a future conflict arose.  *Id.* at 812.  The *National Park Hospitality* situation is radically different than here, where a federal agency immediately and permanently exempting itself from the Sunshine Act, which will forever restrain the public from understanding vital details of the agency's spending and functioning.

## IV.    APA review of Plaintiffs' claims is appropriate and necessary.

APA review is appropriate in this case because Plaintiffs challenge the DFC's Final Rule exempting the agency from compliance with the Sunshine Act.  While the Sunshine Act provides judicial review provisions, they are not completely applicable to the first two of Plaintiffs' three claims here because of Defendant agency's Final Rule exempting itself from the Sunshine Act, which falls outside that statute's waiver of sovereign immunity.  *See* 5 U.S.C. § 552b(h).[8]  In addition, Plaintiffs' third claim is properly brought under both the Sunshine Act and the APA because it is there that Plaintiffs allege that specific DFC meetings have not complied with the Sunshine Act.  *Id.*

---

[7]  Defendant did not properly compile its Table of Contents per the Local Rules: "If a table of cases is provided, counsel shall place asterisks in the margin to the left of those cases or authorities on which counsel chiefly relies."  L.Cv.R. 7(a).  Thus, it is impossible to tell whether Defendant actually relies upon this case (and others), or merely uses it for a cite quotation apart from its underlying holding.

[8]  In addition, section (g) mentioned in Plaintiffs' Complaint in the context of the agency's failure to act, supports the notion that agencies which improperly do not issue any Sunshine Act violations should be sued "in the United States District Court for the District of Columbia."  5 U.S.C. § 552b(g).  *See also* note 3, *supra*.

Significantly, section (h) of the Sunshine Act provides for judicial review of individual agency decisions to close specific "meetings"—not for judicial review of blanket exemptions created by an APA final rule. 5 U.S.C. § 552b(h).  Defendant criticizes Plaintiffs for failing to cite specific agency decisions under the Sunshine Act they are challenging.  Def. Mem. at 10.  However, in addition to Plaintiffs' declarations which Defendant does not meaningfully digest, Plaintiffs' challenge the agency's Final Rule to exempt itself from Sunshine Act obligations altogether under the APA.  Compl. at ¶¶ 58–66, ECF No. 1; *see also* Attachment E (85 Fed. Reg. 20,423 (Apr. 13, 2020)).  While the Sunshine Act provides for judicial review of allegedly inadequate Sunshine Act regulations or decisions regarding specific meetings, it does not contemplate a situation where the agency wholesale exempts itself by final rule from Sunshine Act requirements entirely.  Plaintiffs thus have no avenue under the Sunshine Act to bring their claim against DFC's Final Rule.  Therefore, Plaintiffs' challenge to the DFC final rule, under Plaintiffs' Claims One and Two, is properly before this court under the gap-filling APA provision providing for judicial review of "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.

This situation is in accord with *Bennett v. Spear*, where the Supreme Court considered whether plaintiffs could bring a challenge to final agency action for violation of the Endangered Species Act ("ESA") under the APA where such a claim was not contemplated by the ESA citizen suit provision.  520 U.S. at 175.  There the Supreme Court found that "nothing in the ESA's citizen-suit provision expressly precludes review under the APA, nor do we detect anything in the statutory scheme suggesting a purpose to do so."  *Id.* at 175.  Similarly, the Sunshine Act's judicial review provisions do not explicitly preclude review under the APA.  Thus, some challenges to agency action under the Sunshine Act can be pleaded under the

statute's judicial review provision, but all others not falling precisely under the Sunshine Act must be brought under the APA.  Here, Plaintiffs' first claim challenges the DFC's procedural failure to undertake notice and comment when issuing its Final Rule, Compl. at ¶ 61, and Plaintiffs' second claim challenges the substance of the agency's Final Rule exempting itself from the Sunshine Act, *id.* at ¶ 65.  Neither of the Sunshine Act judicial review provisions, 5 U.S.C. § 552b(g), (h), provide an adequate remedy for judicial review of claims of this type.  *See* 5 U.S.C. § 704.[9]

Defendant attempts to shore up its argument that Sunshine Act judicial review provisions preempt application of the APA with irrelevant case law.  Def. Mem. at 12.  The primary case cited by Defendant concerns a challenge brought under FOIA's "reading room" provision, 5 U.S.C. § 552(a)(2)—a FOIA-specific requirement with no corollary in the Sunshine Act.  *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 846 F.3d 1235, 1244 (D.C. Cir. 2017) (finding that FOIA offered an "adequate remedy" to plaintiffs' claim seeking to compel the Office of Legal Counsel to meet its disclosure obligations under the FOIA "reading room" provision since FOIA allowed plaintiffs to gain access to the records sought).

Defendant's citation to another FOIA case for the proposition that the judicial review available under the Sunshine Act "need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre'" is similarly unavailing.  *Elec. Privacy Info. Ctr. v. Internal Revenue Serv.*, 910 F.3d 1232, 1244 (D.C. Cir. 2018).  In that case, the D.C. Circuit found that FOIA provided "the very relief [plaintiff] seeks" making APA review inappropriate. *Id.*  In contrast, here Plaintiffs ask the Court to set aside the DFC's Final Rule to exempt itself

---

[9]  The Sunshine Act judicial review provisions only offer relief for violations arising from specific meetings.  5 U.S.C. § 552b(h).  Plaintiffs' third claim covers this issue.

from complying with Sunshine Act requirements.  None of the relief offered in the judicial

review provisions of the Sunshine Act would effectuate this result, and thus Plaintiffs cannot

obtain the relief they seek without invoking the APA's judicial review provisions.  *Cf. Bowen v.*

*Massachusetts,* 487 U.S. at 879, 905 (1988) (rejecting an alternative remedy that offered only

monetary relief as an inadequate substitute for "general equitable powers of a district court to

grant prospective relief").  Thus, the FOIA cases cited by Defendant are markedly distinct from

the claims at issue here.

　　　For these reasons, the Court should find that Plaintiffs' challenges to the DFC Final Rule

to exempt the agency from Sunshine Act requirements are properly before this Court under the

judicial review provisions of the APA, 5 U.S.C. §§ 702, 704, and the Sunshine Act, 5 U.S.C.

§ 552b(h).

**V.    The DFC's Final Rule exempting the agency from Congressional Sunshine Act obligations requires notice and comment.**

　　　Defendant oddly asserts that "[t]he DFC's removal of obsolete OPIC regulations did not

require notice and comment."  Def. Mem. at 12.  Yet, Plaintiffs do not challenge the DFC's

removal of the OPIC regulations.  Rather, as discussed above, Plaintiffs challenge the DFC's

decision to exempt itself from Sunshine Act obligations altogether.  Compl. at ¶ 65.  The DFC

violated the APA when it issued its substantive Final Rule without undertaking mandatory notice

and comment rulemaking procedures.  5 U.S.C. § 553.

　　　It is well-established in the D.C. Circuit that "[a]n agency is generally required by the

APA to publish notice of proposed rulemaking in the Federal Register and to accept and consider

public comments on its proposal."  *Mendoza v. Perez*, 754 F.3d 1002, 1020 (D.C. Cir. 2014);

*Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 752 (D.C. Cir. 2001); *Chamber of Com.*

*v. U.S. Dep't of Lab.*, 174 F.3d 206, 211 (D.C. Cir. 1999).  The APA generally requires that

legislative rules be adopted through notice and comment rulemaking procedures.  5 U.S.C.
§ 553.  A rule is substantive or legislative when it has "the force and effect of law." *Kisor v.
Wilkie*, ___ U.S. ___, 139 S. Ct. 2400, 2420 (2019) (citation omitted); *see also Guedes v. Bureau
of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 17–18 (D.C. Cir. 2019) (finding the
agency's Bump Stock rule was a legislative rule requiring notice and comment).

Per these procedures, an agency "must publish a general notice of proposed rulemaking
in the Federal Register; give an opportunity for interested persons to participate in the
rulemaking through submission of written data, views, or arguments; and issue publication of a
concise general statement of the rule's basis and purpose." *Sugar Cane Growers' Coop. of Fla.
v. Veneman*, 289 F.3d 89, 95 (D.C. Cir. 2002) (citing 5 U.S.C. § 553(b), (c)); *see also FBME
Bank Ltd. v. Lew*, 209 F. Supp. 3d 299, 314 (D.D.C. 2016); *cf.* 5 U.S.C. § 552b(g) (explaining
that before promulgating Sunshine Act implementing regulations, agencies must "publish[]
notice in the Federal Register of at least thirty days and [provide] opportunity for written
comment by any person").

While notice and comment are not required for a few limited categories of rules, 5 U.S.C.
§ 553(b), excusal from the notice-and-comment requirement under the APA is the exception, not
the norm.  *Mendoza*, 754 F.3d at 1020.  Only "(1) interpretative rules; (2) general statements of
policy; and (3) rules of agency organization procedure, or practice" are exempt from 5 U.S.C.
§ 553's notice-and-comment requirement. *Id.* at 1020–21; *see also Perez v. Mortgage Bankers
Ass'n*, 575 U.S. 92, 95 (2015) (same).

The DFC's Final Rule exempting itself from Sunshine Act compliance is not an
interpretive rule, general statement of policy, or rule of agency organization, procedure, or
practice.  This Final Rule does not fall under any of the exceptions to customary notice and

comment requirements.  Thus, the DFC violated the APA when it failed to provide notice and an opportunity for public comment on its decision to exempt itself from compliance with the Congressional commands of the Sunshine Act.

> ### A.   The DFC's Final Rule exempting itself from mandatory Sunshine Act compliance is a legislative rule.

The DFC Final Rule exempting itself from Sunshine Act obligations is not a mere procedural or interpretive rule, but is a legislative rule that required compliance with notice and comment rulemaking procedures.  The APA requires notice and comment rulemaking for so-called "legislative rules" but not for "interpretive" or "procedural" rules.  *See, e.g.*, *Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 356 (D.C. Cir. 2017) (quoting 5 U.S.C. § 553(b)(3)(A)); *Am. Mining Cong. v. Mine Safety & Health Admin.*, 995 F.2d 1106, 1108–12 (D.C. Cir. 1993).

The Supreme Court has observed that "procedural" rules deal merely with agency "housekeeping," making them appropriate for exemption from APA notice and comment rulemaking.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 310 (1979).  This District Court has also noted that the D.C. Circuit has repeatedly "warned that the procedural-rule exception 'should not be deemed to include any action which goes beyond formality[,]' because procedural rules are intended simply to 'deal[] with the method of operation utilized by the [agency] in the dispatch of its business.'"  *Am. Fed'n of Labor v. Nat'l Lab. Rel. Bd.*, 466 F.Supp.3d 68, 89 (D.D.C. 2020) (citations omitted) (quoting *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1113 (D.C. Cir. 1974)); *and see id.* (quoting *Batterton v. Marshall*, 648 F.2d 694, 702 n.34 (D.C. Cir. 1980), in explaining that procedural rules are "'primarily directed toward improving the efficient and effective operations of an agency"); *Kessler v. F.C.C.*, 326 F.2d 673, 680 (D.C. Cir. 1963). Furthermore, the onus is on the agency to demonstrate that its rule falls under the "narrow

procedural exemption, and notice-and-comment is required." *Am. Fed'n of Labor*, 466 F.Supp.3d at 89.

As to interpretive rules, the Supreme Court has clarified that they are "'issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers.'" *Perez*, 575 U.S. at 97 (quoting *Shalala v. Guernsey Mem. Hosp.*, 514 U.S. 87, 99 (1995)). By contrast, a legislative rule "does more than simply clarify or explain a regulatory term, or confirm a regulatory requirement, or maintain a consistent agency policy." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Sullivan*, 979 F.2d 227, 237 (D.C. Cir. 1992). In this way legislative "rules have the force and effect of law." *Am. Mining Cong.*, 995 F.2d at 1109.

The DFC's Final Rule exempting itself from Sunshine Act requirements is a legislative rule that required notice and comment rulemaking. The Final Rule cannot plausibly be characterized as a procedural rule—despite attempts by Defendant to couch this rule as mere "housekeeping" removal of obsolete OPIC regulations—because, as discussed more fully below and in Plaintiffs' declarations, by exempting itself from compliance with the Sunshine Act the DFC directly abridged the public's statutory right to information.

Further, the Final Rule does much more than "merely explain the statute," as would an interpretive rule. *Chamber of Com. of the U.S. v. Occupational Safety & Health Admin.*, 636 F.2d 464, 469 (D.C. Cir. 1980). First, the DFC Final Rule evinces the agency's substantive decision not to comply with a clear statutory command from Congress. Unlike an interpretive rule, the DFC Final Rule does not merely explain the statutory language of the Sunshine Act; rather, it attempts to create a wholesale exemption from the entire mandatory statutory regime. *See* Final Rule (Attachment E) ("the Sunshine Act is not applicable to the DFC"). Crucially, the Sunshine Act itself places the burden on the *agency* to demonstrate the validity of any exemption

19

from the statute's open meeting requirements.  *See* 5 U.S.C. § 552b(h)(1) (stating that when an agency's decision, such as to close a meeting, is challenged in court, "[t]he burden is on the defendant to sustain his action").

The DFC's Final Rule that the Sunshine Act obligations do not apply to the agency had the effect of altering the legal rights of the public as is characteristic of a legislative rule. Previously, members of the public such as Plaintiffs had access to meetings and minutes for programs governed by the OPIC, such as the U.S. bilateral investment programs.  *See, e.g.*, Zendejas Decl. at ¶¶ 11–16.  Currently, the DFC rule exempting the agency from Sunshine Act compliance eliminates the public's access to such information about these government programs.[10]  As the D.C. Circuit has explained, "an agency action which has the effect of suspending a duly promulgated regulations is normally subject to APA rulemaking requirements," including notice-and-comment procedures.  *Env't Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 816 (D.C. Cir. 1983); *see also Sierra Club v. EPA*, 873 F.3d 946, 952 (D.C. Cir. 2017).

For example, Plaintiff Center for International Environmental Law has been deeply involved in the Alto Maipo Hydroelectric Project in Chile since 2015.  *See* Zendejas Decl. at ¶ 12.  This OPIC-financed project was transferred to the purview of the DFC at the end of 2019. *Id.* at ¶ 16.  From 2015 to 2019, CIEL was able to attend OPIC public meetings, disseminate information about proposed projects made available by the agency in the Federal Register to interested and affected community members, and advocate directly before the agency at public hearings.  *See, e.g.*, *id.* at ¶ 14.  Plaintiff CIEL lists at least eight specific meetings it attended with OPIC concerning the Alto Maipo Hydroelectric Project between 2017 and 2019.  *Id.* at

---

[10]  Curiously, before issuing its Final Rule exempting the DFC from Sunshine Act compliance, the agency issued a "Sunshine Act Meeting Notice," ostensibly believing it was required to comply with the Sunshine Act.  85 Fed. Reg. 12,777 (Mar. 4, 2020); *see* Attachment G.

¶¶ 4–7.  However, since DFC took over federal financing of the Alto Maipo Hydroelectric Project at the end of 2020, Plaintiffs have not received any public notice of upcoming DFC meetings, nor open access to those meetings and deliberations.  *Id.* at ¶ 17.  Thus, both Plaintiffs' and the public's rights under the Sunshine Act have been substantially altered by the DFC's Final Rule exempting the agency from Sunshine Act compliance.

The DFC's exemption from Sunshine Act requirements without APA notice and comment procedures "has binding effects on private parties," including Plaintiffs and the agency itself.  *Clarian Health*, 878 F.3d at 357.  By failing to conduct notice and comment rulemaking on the Final Rule, the DFC was deprived of comments from sister agencies on their interpretations and implementations of the Sunshine Act's statutory language, in addition to comments from the public concerning the DFC's unlawful application of the Act's plain statutory language.  Members of the public, such as those that routinely attend or review meeting minutes disclosed under the Sunshine Act, like Plaintiffs, were also prevented from providing public comments on the DFC's exemption decision, including information concerning how such exemption would impact their work.  *See, e.g.*, Norlen Decl. at ¶ 7; Zendejas Decl. at ¶¶ 17–21.

The DFC's determination that "the Sunshine Act is not applicable to DFC" in the Final Rule does much more than merely "alter the manner in which the parties present themselves or their viewpoints to the agency."  *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 250 (D.C. Cir. 2014) (finding a memorandum between EPA and the Army Corps detailing an enhanced coordination process for mining permitting was a "procedural rule" not subject to notice and comment rulemaking procedure because it did not "alter the rights or interests of parties").  By foregoing notice and comment rulemaking on its Final Rule determining that the agency is not subject to the Sunshine Act, Plaintiffs were left with no opportunity to provide comment at all on

both the exemption decision as well as the impact they would feel from the closure of DFC

meetings.  Such impacts include, for example, those described by Plaintiff Center for Biological

Diversity when it attempted to gain information that would have otherwise been made available

under the Sunshine Act concerning DFC decisions made at closed-door meetings.  *See* Snape

Decl. at ¶¶ 4–8.  The DFC's Final Rule exempting the agency from Sunshine Act compliance

without undertaking notice and comment rulemaking thus violated the APA.

> **B.**    **The failure to provide notice and comment on the DFC's Final Rule**
> **exempting the agency from the Sunshine Act was not a mere harmless error.**

Defendant's failure to comply with APA notice and comment procedures in issuing its

Final Rule exempting itself from Sunshine Act compliance was not mere harmless error.  As

numerous circuit courts have explained, the doctrine of harmless error should only be used

"when a mistake of the administrative body is one that clearly had no bearing on the procedure

used or the substance of decision reached."  *U.S. Steel Corp. v. EPA*, 595 F.2d 207, 215 (5th Cir.

1979) (quoting *Braniff Airways v. Civ. Aeronautics Bd.*, 379 F.2d 453, 466 (D.C. Cir. 1967).

Furthermore, the D.C. Circuit has "not been hospitable to government claims of harmless error in

cases in which the government violated § 553 of the APA by failing to provide notice."  *Allina

Health Servs. v. Sebelius*, 746 F.3d 1102, 1109 (D.C. Cir. 2014) ("The most egregious are cases

in which a government agency seeks to promulgate a rule by another name—evading altogether

the notice and comment requirements.").  Only when an agency "mistake" does not affect the

outcome or prejudice the interested party would it be appropriate to remand for agency

reconsideration.  *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004).

However, in this case, DFC's "mistake"—forgoing notice-and-comment—clearly

affected the outcome of its decision to exempt itself from the Sunshine Act, and deprived

Plaintiffs of their legal rights under the APA and Sunshine Act.  Provided the opportunity to

comment, Plaintiffs would have shared invaluable information with DFC as to the importance of public meetings, like those held by OPIC under the Sunshine Act.  In fact, in a case cited by Defendant, the D.C. Circuit Court found that "the entire premise of notice-and-comment requirements is that an agency's decisionmaking may be affected by concerns aired by interested parties through those procedures."  *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 84–85 (D.C. Cir. 2020) (quoting *Allina Health Servs.,* 746 F.3d at 1109.

Here, DFC did not invite *any* sort of comment on its Final Rule exempting itself from Sunshine Act compliance.  *See* Attachment E.  In this situation, there was "an utter failure to comply with notice and comment" which the D.C. Circuit has stated "cannot be considered harmless" because there is uncertainty as to the effect of the failure of DFC.  *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 41 (D.C. Cir. 2005) (citation omitted).  Only if it was <u>impossible</u> for public comment to change the course of agency decisionmaking could such a failure be considered harmless. *See Wheeler*, 955 F.3d at 84–85.

Arguing in support of its removal of the OPIC regulations—which Plaintiffs do not challenge—Defendant cites *Hadson Gas Systems v. FERC*, 75 F.3d 680 (D.C. Cir. 1996).  Def. Mem. at 15.  In *Hadson Gas Systems*, the D.C. Circuit Court denied plaintiffs' challenge to the agency's failure to undertake notice and comment when rescinding regulations because the controlling statute had become obsolete.  75 F.3d at 681.  However, in the present case, the controlling statute at issue—the Sunshine Act (not the obsolete OPIC regulations that Plaintiffs do not challenge)—still maintains the full force of law and applies to collegially-headed agencies, such as the new agency DFC.

Plaintiffs are substantially injured by the DFC's failure to comply with Sunshine Act open government requirements.  Plaintiffs' declarations detail instances in which DFC's failure

to comply with the Sunshine Act requirements has significantly impaired their ability to track federally financed projects.  *See* Zendejas Decl. at ¶ 18; Uhlemann Decl. at ¶ 11; Norlen Decl. at ¶ 7.  For example, the DFC made decisions at its private board meeting on June 9 that were not even noted in the public notice and agenda of the public DFC Board meeting.  Snape Decl. at ¶ 4–8.  Plaintiffs were utterly uninformed of these closed-door decisions, which had enormous environmental impact well beyond the exacting standard for harmless error.

DFC's failure to comply with Sunshine Act led to clear deficiencies at its June 9, 2021 meeting, demonstrating further that its failure to provide notice and comment was not harmless.  Among those deficiencies, there was no dialogue or question-and-answer period for the public to interact with agency officials, nor did DFC provide any transcript or minutes of the meeting.  Snape Decl. at ¶ 6.  Had DFC followed proper notice-and-comment requirements under 5 U.S.C. § 553, members of the public, including Plaintiffs, would have been able to obtain necessary information about agency decisionmaking, obtain access to agency meetings or minutes of those meetings, and notice of meeting closures as required by the Sunshine Act.

Plaintiffs' line of work necessitates access to agency meetings and officials that it does not have because of DFC's self-exemption.  For example, relying on the Federal Register for information regarding upcoming hearings and projects, CIEL staff for many years took part in OPIC public hearings, submitted oral and written comments, and engaged in public discourse on agency projects and policies.  Zendejas Decl. at ¶ 14.  In doing so, CIEL was able to "relay the questions, concerns, and comments of those partners, or of CIEL itself, to the OPIC Board.  CIEL was also able to facilitate partners' direct participation in public meetings, so that they could speak on their own behalf, when advance notice of the timing and agenda of such meetings was provided."  *Id.*; *see also* DeAngelis Decl. at ¶ 5.  Without such opportunities to participate,

Plaintiffs' have been harmed because they cannot fully carry out their organizational missions. Thus, DFC's decision to exempt itself from the Sunshine Act without notice-and-comment was not a harmless error as it has substantively harmed Plaintiffs.

### C. The DFC's open meeting provisions are not a legal substitute for Sunshine Act compliance.

The BUILD Act's *de minimus* (or "floor") transparency requirements do not satisfy the open government provisions of the Sunshine Act, nor do they serve as a substitute for the Sunshine Act. *Compare* 22 U.S.C. § 9613(b), (c)[11] *with* 5 U.S.C. § 552b(b) ("every portion of every meeting of an agency shall be open to public observation"). First, the BUILD Act requires the DFC Board to develop "a publicly available policy with respect to consultations, hearings, and other forms of engagement in order to provide for meaningful public participation in the Board's activities." 22 U.S.C. § 9613(b)(1)(C). Second, the BUILD Act sets a minimum requirement for the DFC Board to hold "at least 2 public hearings each year in order to afford an opportunity for any person to present views." 22 U.S.C. § 9613(c).

In enacting the Sunshine Act, Congress codified the idea that "[g]overnment is and should be the servant of the people, and it should be fully accountable to them for the actions which it supposedly takes on their behalf." H.R. Rep. No. 94-880, pt. I at 2 (1976), *as reprinted in* 1976 U.S.C.C.A.N. 2183, 2184. To this end, the Act allows the public access to information regarding the federal government's decisionmaking processes. Thus, the Sunshine Act effectuates Congress's objective that the "government [] conduct the public's business in public." S. Rep. No. 94-354, at 1 (1975). Consequently, the Sunshine Act requires a suite of open government provisions, including public notice of meetings, public attendance at meetings,

---

[11] OPIC's organic statute also possessed a public meeting provision but that agency, as has been discussed, also managed to simultaneously comply with the Sunshine Act. *See* 22 U.S.C. § 2191a(c) (repealed).

public minutes and transcripts of meetings, and notice of closure of any meetings.  5 U.S.C. § 552b(b)–(f).

In contrast, the public hearing provisions of the BUILD Act merely provide a forum for the DFC Board to hear comments from the public.  22 U.S.C. § 9613(c).  Thus, the meetings Plaintiffs recently attended on June 9, 2021, as an example, did not afford equivalent or even similar open government and access rights that the public would have had under the Sunshine Act.  Snape Decl. at ¶¶ 4–8.  At those meetings, the public was provided with a very limited forum to provide comments but, for example, "there were no transcript or minutes made available from the June 9 meeting (or previous meetings)," and "there was no dialogue, no question-and-answer period, and no discussion about any project between the public and agency officials."  Snape Decl. at ¶ 6.  Furthermore, because the DFC makes decisions year-round, the two BUILD Act public hearings would not present opportunity for public comment on the majority of projects the DFC considers.  With only two meetings a year, public comment would be denied *de facto* for most projects because of timing—that is, if members of the public are even aware at all of the DFC's consideration of such projects.  In sum, the BUILD Act meetings do nothing to effectuate the Sunshine Act mandate that "every portion of every meeting of an agency . . . be open to public observation." 5 U.S.C. § 552b(b).

Therefore, to the extent the DFC does hold public hearings as required under the BUILD Act, those meetings do not satisfy Sunshine Act requirements.  Furthermore, if Defendant holds a different view of its Sunshine Act obligations, it should have undertaken notice and comment rulemaking on that issue.

**VI.    Plaintiffs will likely prevail on the merits because the DFC is an agency subject to the Sunshine Act.**

Plaintiffs will likely prevail on the merits of this litigation.  Once the issue of the CEO's Board status is clarified, Plaintiffs can and will demonstrate that the DFC is an agency subject to the Sunshine Act.  This is because of the plain language used by Congress in the BUILD Act, the overall intent of Congress in both the BUILD Act and the Sunshine Act, and the past practice of Defendant DFC's predecessor agency OPIC.

The starting point in understanding the BUILD Act and this dispute over the Sunshine Act is the language used by Congress in passing the BUILD Act, particularly the statutory provisions on the crucial issue of board composition that leads to the definition of "agency" under the Sunshine Act.  This board composition issue is the crux of the instant litigation.

Unlike the statute creating the MCC, upon which Defendant strongly (and wrongly) relies in its Final Rule, 85 Fed. Reg. 20,423 (Apr. 13, 2020), Congress did not place the CEO of the DFC in the same statutory grouping as the four clearly *ex officio* DFC Board members when creating the new agency in the BUILD Act:

> (2) Membership of Board
>
>> (A)  In general
>>
>>> The Board shall consist of—
>>>
>>> (i)    the Chief Executive Officer of the Corporation;
>>> (ii)   the officers specified in subparagraph (B)[12]; and
>>> (iii)  four other individuals who shall be appointed by the President, by and with the advice and consent of the Senate

---

[12]  The four *ex officio* DFC Board Cabinet secretaries (or agency designees) in the BUILD Act are the Secretary of State, the Secretary of Treasury, the Secretary of Commerce, and the Administrator for the U.S. Agency for International Development (AID).  22 U.S.C. § 9613(b)(2)(B)(i)–(ii).  All four individuals are from other agencies, not the DFC.

22 U.S.C. § 9613(b)(2)(A)(i)–(iii).  By definition, the DFC CEO is different than the four *ex officio* Cabinet officers identified in the BUILD Act because the CEO is being nominated and confirmed on the agency's Board only because he is the CEO of that same exact agency. Congress did not intend the DFC CEO to be an *ex officio* board member of his own agency.  *See generally* 22 U.S.C. § 9613(d)(i)–(iii) (CEO Appointment, Authorities and Duties, and Relationship to Board).

This distinction is reinforced with a close examination of the MCC statute, the law and agency upon which Defendant DFC desperately relies to justify DFC's unilateral decision to opt out of the mandatory Sunshine Act:

> (3) Membership
> The Board shall consist of—
>
> (A) the Secretary of State, the Secretary of the Treasury, the Administrator of the United States Agency for International Development, the Chief Executive Officer of the Corporation, and the United States Trade Representative; and
>
> (B) four other individuals with relevant international experience who shall be appointed by the President, by and with the advice and consent of the Senate

MCC Statute, 22 U.S.C. § 7703(c)(3).  In addition, unlike the DFC CEO, the MCC CEO has the power to appoint all officers of the MCC.  *Compare* 22 U.S.C. § 7703(b)(6) *with* 22 U.S.C. § 9613(e)–(g).  This grouping and authority given the MCC CEO indicates a Congressional intent to define the MCC agency outside the boundary of the Sunshine Act.  Yet, Defendant DFC, with different organic legislation, wrongly relies upon the MCC structure and rationale. *See* DFC Final Rule, 85 Fed. Reg. 20,423.  This decision by DFC was arbitrary, capricious, contrary to the intent of the BUILD Act, and a violation of the Sunshine Act.

Defendant erroneously states that "plaintiffs' argument is contradicted by the D.C. Circuit's decision in *Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238 (D.C. Cir.

1981)."  Def. Mem. at 16.  Defendant DFC is incorrect on this point.  First of all, *Symons* was a case where all of the Board members of the agency were held to be *ex officio*, unlike the close split in this case.  670 F.2d at 240.

Even more crucially, in *Symons*, all the *ex officio* individuals were from other agencies, which is why the *Symons* court uses the term "*ex officio* agencies."  *Id.* at 243.  The DFC CEO is nominated and confirmed for both the chief executive position and the board position, at the same time, by virtue of the statutory DFC CEO job description.  22 U.S.C. §§ 9613(b)(2)(A), 9613(d)(1)–(3).  The holding and rationale of *Symons* does not extend to a situation where the Board member in question is both the CEO and Board member of the same agency.[13]  The CEO cannot possibly be properly considered *ex officio* from his own agency.

Finally, the DFC's decision to exempt itself from the Sunshine Act cannot receive deference because the DFC is not tasked with administering the Sunshine Act.  *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). The D.C. Circuit has stated, "*Chevron* deference is available only when an agency interprets a statutory provision that Congress has charged it with administering through application of its expertise." *Allegheny Def. Project v. FERC*, 964 F.3d 1, 11–12 (D.C. Cir. 2020) (finding *Chevron* deference did not apply to FERC [Federal Energy Regulatory Commission] when it issued Tolling Orders to circumvent the Natural Gas Act provision, 15 U.S.C § 717r(b), conferring jurisdiction on federal courts); *see also Nat'l Parks Conservation Ass'n v. Semonite*, 916 F.3d 1075, 1088 (D.C. Cir. 2019) (giving no deference to U.S. Army Corps of Engineers when it violated the National Environmental

---

[13]  The legislative history also supports the notion that "*ex officio*" board members are those from other agencies.  *Symons*, 670 F.2d at 242 (citing *Government in Sunshine Act: Hearings on H.R. 11656 Before the Subcomm. on Administrative Law and Gov't Relations of the House Committee on the Judiciary*, 94th Cong, 2d sess. 16 (1976)).

Policy Act, which it does not administer, by failing to prepare an environmental impact statement prior to granting permit to electrical company).

Even under the less deferential standard of *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), DFC should receive no deference on its Sunshine Act decision.  "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."  *Id.*; *see also United States v. Mead Corp.*, 533 U.S. 218 (2000).  The DFC should receive no deference on its exemption decision not only because it does not administer the Sunshine Act, but also because, *inter alia*, its action lacks rational reasoning, skirts procedure, and is contrary to past practice.  *Skidmore*, 323 U.S. at 140.  *See also* Attachment G (DFC position different one month before issuing its Final Rule without any proposed rule).

**VII.    Plaintiffs' requested relief is reasonable and appropriate.**

Both the Sunshine Act and the APA provide for declaratory and injunctive relief.  *See* 5 U.S.C. § 552b(g), (h); 5 U.S.C. § 702.  Defendant, however, blithely declares that "[e]ven if the DFC were subject to the Sunshine Act, the only relief available in this action would be an order requiring the DFC to adopt Sunshine Act regulations."  Def. Mem. at 16.  As a threshold matter, Plaintiffs have expressly stated that they are not presently seeking injunctive relief because they were and are still hoping for a settlement agreement with the new administration.  Snape Decl. at ¶ 8.

More problematic, Defendant again confuses and conflates the waivers of sovereign immunity contained in both the Sunshine Act and APA, and the injunctive relief available under both statutes.  Two of the three claims brought by Plaintiff are brought under the APA: (1) the

failure to issue a Proposed Rule for public comment and (2) the illegal Final Rule exempting Defendant DFC from the Sunshine Act.  Plaintiffs' Compl. at ¶¶ 58–65 (Claims One and Two).

The Sunshine Act expressly contemplates other causes of action related to it, but brought under other legal authority such as the APA:

> Nothing in this section authorizes any Federal court having jurisdiction *solely* on the basis of paragraph (1) to set aside, enjoin, or invalidate any agency action . . . taken or discussed at any agency meeting out of which the violation of this section arose.

5 U.S.C. § 552b(h)(2) (emphasis added).  Defendant actually concedes this point by acknowledging a party may bring a suit against "other agency action" that raises "a dispute about whether the agency complied with the Sunshine Act in taking that action."  Def. Mem. at 17 (citing 5 U.S.C. § 552b(h)).  Defendant cannot be allowed to play a shell game by arguing that its Final Rule making a substantive decision about the Sunshine Act is somehow magically immune from both APA and Sunshine Act statutory requirements.

In addition, Plaintiffs' request for relief is eminently reasonable.  Instead of immediately shutting down the agency and its actions, which could cause unforeseen collateral injury to third parties, Plaintiffs request a judicial declaration and associated relief that Defendant DFC is violating both the Sunshine Act and the APA, that Defendant DFC must expeditiously issue a proposed rule to the public under the Sunshine Act and APA stating an intention to comply with the Sunshine Act, and that all future DFC board meetings must abide by the requirements of the Sunshine Act.  *See* Compl. at ¶¶ 67–71 (Claim Three); Snape Decl. at ¶¶ 4–7.  This includes releasing all records and documents associated with wrongfully closed DFC meetings.  *See* 5 U.S.C. § 552b(k), (m).  The Sunshine Act itself possesses fact-specific exemptions for the agency to withhold certain categories of information disclosure, making the DFC's attempt at a blanket agency-wide exemption even more spurious. 5 U.S.C. § 552b(c), (d).

31

## CONCLUSION

For all the reasons stated, Plaintiffs respectfully ask this Court to deny Defendant's Motion to Dismiss and order a schedule for production of an administrative record to decide this case on the merits.  Plaintiffs have pleaded three ripe and valid claims for which this Court has jurisdiction.  Plaintiffs clearly possess standing and also possess the better case on the merits. Alternatively, this Court has the power and authority to order the Defendant to issue a proposed rule on its potential compliance with the Sunshine Act, which would arguably be the more efficient use of judicial and agency resources.

Dated:  August 13, 2021                                      Respectfully submitted,

                                                             /s/ *William J. Snape III*
                                                             William J. Snape, III
                                                             DC Bar No. 455266

                                                             American University Law School
                                                             4300 Nebraska Avenue, NW
                                                             Washington, DC 20016
                                                             wsnape@wcl.american.edu

                                                             Center for Biological Diversity
                                                             1411 K Street, NW
                                                             Washington, DC 20005
                                                             202-536-9351

                                                             *Attorney for Plaintiffs*

32