# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.* | )<br>)<br>) |
| Plaintiffs | )<br>) |
| v. | )<br>) Civil Action No. 21-cv-1491 (CRC)<br>) |
| U.S. INTERNATIONAL DEVELOPMENT<br>FINANCE CORPORATION, | )<br>)<br>) |
| Defendant | ) |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT .................................................................................................................... 2

    I.    The complaint fails to meet the jurisdictional requirements of standing and ripeness because the plaintiffs' challenge is not tied to any specific request for information. ................................................................................................ 2

        A.    The plaintiffs cannot establish standing because their challenge is not tied to any specific request for information. ........................................................ 2

        B.    The plaintiffs also cannot meet the jurisdictional requirement of ripeness. 4

    II.    The complaint does not state a claim under either the APA or the Sunshine Act. .. 5

        A.    The plaintiffs cannot bring claims under the APA because the judicial review provisions of the Sunshine Act provide an adequate remedy. .......... 5

        B.    The DFC's removal of obsolete OPIC regulations did not require notice and comment. ............................................................................................. 6

        C.    Even if notice and comment had been required, the failure to provide notice and comment was harmless. ............................................................. 8

        D.    The plaintiffs' claims fail on the merits because the DFC is not an "agency" under the Sunshine Act. ............................................................... 9

        E.    Even if the DFC were subject to the Sunshine Act, the only permissible relief would be an order requiring the DFC to adopt Sunshine Act regulations. .............................................................................................. 12

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES**

*Atl. States Legal Found. v. EPA*,
   325 F.3d 281 (D.C. Cir. 2003) .................................................................... 5

*Chevron U.S.A. Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984) .................................................................................. 12

\* *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*,
   846 F.3d 1235 (D.C. Cir. 2017) ................................................................. 6

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) .................................................................................... 4

*Envtl. Def. Fund, Inc. v. Gorsuch*,
   713 F.2d 802 (D.C. Cir. 1983) .................................................................... 7

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009) .................................................................... 5

*Nat'l Park Hosp. Ass'n v. Dep't of the Interior*,
   538 U.S. 803 (2003) .................................................................................... 5

*Perry Cap. LLC v. Mnuchin*,
   864 F.3d 591 (D.C. Cir. 2017) .................................................................... 4

\* *Prisology, Inc. v. Fed. Bureau of Prisons*,
   852 F.3d 1114 (D.C. Cir. 2017) ................................................................. 3

\* *Pub. Citizen v. Dep't of State*,
   276 F.3d 634 (D.C. Cir. 2002) ................................................................... 7

*Pub. Citizen v. U.S. Dep't of Justice*,
   491 U.S. 440 (1989) .................................................................................... 3

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) .................................................................................. 12

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................ 3

*Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*,
   980 F.3d 109 (D.C. Cir. 2020) .................................................................... 2

\* *Symons v. Chrysler Corp. Loan Guarantee Bd.*,
   670 F.2d 238 (D.C. Cir. 1981) ............................................................. passim

**FEDERAL STATUTES**

10 U.S.C. § 2113a(b)(5) ............................................................................................... 11

22 U.S.C. § 4606(a) ..................................................................................................... 11

42 U.S.C. § 1863(a) ..................................................................................................... 11

Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706 ................. passim

    5 U.S.C. § 553(b)(3)(A) ..................................................................................... 1, 7

    5 U.S.C. § 704 ....................................................................................................... 5

Better Utilization of Investments Leading to Development (BUILD) Act of 2018, 22 U.S.C. §§ 9601–9689 .................................................................................................. 9

    22 U.S.C. § 9613(b)(2)(A) .................................................................................... 9

    22 U.S.C. § 9613(b)(2)(A)(i) ................................................................................ 9

    22 U.S.C. § 9613(b)(2)(A)(ii) ............................................................................. 10

    22 U.S.C. § 9613(b)(2)(A)(iii) ............................................................................ 10

    22 U.S.C. § 9613(b)(2)(B)(i) ......................................................................... 10, 11

    22 U.S.C. § 9613(b)(2)(B)(ii) .............................................................................. 11

    22 U.S.C. § 9613(b)(2)(C)(i) .............................................................................. 10

    22 U.S.C. § 9613(d)(1) ......................................................................................... 9

Government in the Sunshine Act, 5 U.S.C. § 552b ............................................... passim

    5 U.S.C. § 552b(a)(1) ..................................................................................... 9, 10

    5 U.S.C. § 552b(g) ........................................................................................... 5, 6

    5 U.S.C. § 552b(h)(1) ...................................................................................... 5, 6

    5 U.S.C. § 552b(h)(2) ...................................................................................... 5, 6

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ................................................................ 11, 12

**PRELIMINARY STATEMENT**

Defendant U.S. International Development Finance Corporation (DFC) established in its opening brief that the plaintiffs' complaint, purportedly brought under the Administrative Procedure Act (APA)[1] and the Sunshine Act,[2] does not meet the jurisdictional requirements of standing and ripeness, because their claims are not tied to any particular denial of access to agency records or meetings. The plaintiffs fail to overcome this hurdle in their opposition brief, as they simply do not allege that they made any specific request for access to agency records or meetings that was denied. The plaintiffs' opposition also fails to meaningfully refute the DFC's arguments on the merits of the plaintiffs' claims. The Sunshine Act's judicial review provisions clearly provide relief of the same genre as the plaintiffs' APA claims, requiring dismissal of those claims. The agency was not required to provide for notice and comment before removing the obsolete Sunshine Act regulations of its predecessor agency, the Overseas Private Investment Corporation (OPIC), because the APA does not require notice and comment for matters of "agency organization, procedure, or practice," 5 U.S.C. § 553(b)(3)(A). Most dispositively, the plaintiffs have not presented any reason why the Court should or could disregard the D.C. Circuit's binding, on-point decision in *Symons v. Chrysler Corp. Loan Guarantee Board*, 670 F.2d 238 (D.C. Cir. 1981), which compels the conclusion that the DFC is not an "agency" under the Sunshine Act. The Court should dismiss this action for lack of subject matter jurisdiction or failure to state a claim.

---

[1] Administrative Procedure Act (APA), 5 U.S.C. §§ 551–559, 701–706.
[2] Government in the Sunshine Act (Sunshine Act), 5 U.S.C. § 552b.

# ARGUMENT

I. **The complaint fails to meet the jurisdictional requirements of standing and ripeness because the plaintiffs' challenge is not tied to any specific request for information.**

   A. **The plaintiffs cannot establish standing because their challenge is not tied to any specific request for information.**

As discussed in DFC's opening brief, the plaintiffs cannot establish standing because their suit does not challenge the denial of any particular request for access to specific agency records or meetings. *See* Def.'s Mem. 7–10. The complaint does not allege that the plaintiffs requested and were denied access to government records or meetings. Instead, the complaint alleges that the plaintiffs have attended OPIC and DFC meetings in the past and fear being denied access to information in the future. Allegations of this kind are not sufficient to establish standing. *See* Def.'s Mem. 7–9.

As an initial matter, the plaintiffs are incorrect when they assert in opposition that the DFC bears the burden to demonstrate that the plaintiffs lack standing, *see* Pls.' Opp'n to Def.'s Mot. to Dismiss 2, ECF No. 10. As discussed in DFC's opening brief, the plaintiffs bear the burden of establishing standing. *See* Def.'s Mem. in Supp. of Mot. to Dismiss 5, ECF No. 8 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

Nor can the plaintiffs cure the deficiencies in their complaint by relying on the declarations attached to their opposition brief, *see* Pls.' Opp'n 6 n.5. As discussed in the DFC's opening brief, because the DFC has presented a facial challenge to jurisdiction, as opposed to a factual challenge, the Court should consider only the complaint and matters incorporated into the complaint. *See* Def.'s Mem. 9–10. The plaintiffs have not amended or supplemented their complaint to incorporate any matters stated in the declarations. *See* Def.'s Mem. 9–10; *see also Statewide Bonding, Inc. v. U.S. Dep't of Homeland Sec.*, 980 F.3d 109, 117 n.5 (D.C. Cir. 2020) ("[A] complaint may not be amended by the briefs in opposition to a motion to dismiss."

(quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000))). Indeed, the plaintiffs have explicitly disclaimed any intent to amend their complaint. Pls.' Opp'n 6 n.5 ("Plaintiffs did not seek to amend [their] Complaint with the filing of these declarations.").

Even if the Court were to consider the declarations, they would not establish the plaintiffs' standing. The declarations identify specific meetings of the DFC Board and raise specific complaints about how the DFC conducted those meetings, but nowhere do they say that the plaintiffs ever requested advance notice of the meetings, information about the meetings, or access to the meetings. Without such a request, even if the meetings were "closed," any deficiency in how the meetings were conducted is not "personal" or "individual" to the plaintiffs, and the plaintiffs cannot show the kind of "particularized" injury needed to establish standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"); *Prisology, Inc. v. Fed. Bureau of Prisons*, 852 F.3d 1114, 1116 (D.C. Cir. 2017) (holding that a plaintiff could not establish standing based on the agency's purported failure to publish records electronically because that claim did not "differentiate [the plaintiff] from the public at large" and only described a "harm common to everyone"). In attempting to compare this case to *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440 (1989), the plaintiffs claim that "[t]his is a case where Defendant agency DFC has directly *denied* meeting access and information to Plaintiffs," Pls.' Opp'n 8, but neither the complaint nor the declarations allege any facts about the plaintiffs requesting access to meetings or information and DFC denying such requests. Thus, this case is indeed distinguishable from *Public Citizen*, where the plaintiffs had made specific requests for records and information and advance notice of meetings. *See Pub. Citizen*, 491 U.S. at 449 ("Appellant WLF has *specifically requested, and been refused*, the names of candidates under consideration

by the ABA Committee, reports and minutes of the Committee's meetings, and advance notice of future meetings." (emphasis added)).

Moreover, the plaintiffs are not seeking relief in connection with the meetings discussed in their declarations. *See* Pls.' Opp'n 30 ("Plaintiffs have expressly stated that they are not presently seeking injunctive relief . . . ."). Instead, they seek only relief concerning future meetings. *See* Compl. for Declaratory and Injunctive Relief 15–16 (Prayer for Relief), ECF No. 1. Relief concerning future meetings would not redress injuries associated with past meetings, and thus injuries associated with past meetings cannot help the plaintiffs establish standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) ("'[T]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.' . . . '[S]tanding is not dispensed in gross.'" (quoting *Lewis v. Casey*, 518 U.S. 343, 357, 358 n.6 (1996))).

### B. The plaintiffs also cannot meet the jurisdictional requirement of ripeness.

For the same reasons, the plaintiffs cannot meet the jurisdictional requirement of ripeness. As set forth in DFC's opening brief, the plaintiffs' failure to allege a specific request for access to records or meetings, and a denial of such a request, makes their claim unripe. Def.'s Mem. 10.

The plaintiffs' opposition brief focuses exclusively on the prudential ripeness test, which calls for a court to evaluate "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 632 (D.C. Cir. 2017). But a complaint must also meet the constitutional ripeness test, which overlaps with the "injury-in-fact" requirement of standing. *See id.*; Def.'s Mem. 10. Because the plaintiffs do not present an injury that could support standing, they do not meet the constitutional

ripeness requirement. And because the plaintiffs are not seeking relief in connection with a specific meeting or request for information, they also do not meet the prudential requirement of ripeness. *See Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808–12 (2003), *discussed in* Def.'s Mem. 10. The plaintiffs have not shown that they will suffer any hardship if they are forced to bring their claims in the form of a concrete dispute about a specific request for access to meetings or information and denial of that request. "They are 'not required to engage in, or to refrain from, any conduct.'" *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 285 (D.C. Cir. 2003) (quoting *Texas v. United States*, 523 U.S. 296, 301 (1998)), *quoted in* Pls.' Opp'n 11.

Because the complaint does not meet the jurisdictional requirements of standing and ripeness, the Court should dismiss this action.

## II. The complaint does not state a claim under either the APA or the Sunshine Act.

### A. The plaintiffs cannot bring claims under the APA because the judicial review provisions of the Sunshine Act provide an adequate remedy.

The plaintiffs cannot bring claims under the APA because the Sunshine Act provides its own specialized judicial review provisions that Congress intended as the route for enforcing the Sunshine Act. As the DFC explained in its opening brief, § 704 of the APA limits review to cases in which "there is no other adequate remedy in a court," 5 U.S.C. § 704, and the judicial review provisions of the Sunshine Act, 5 U.S.C. § 552b(g), (h)(1)–(2), provide an adequate remedy. Def.'s Mem. 11–12.

In opposition, the plaintiffs contend that the Sunshine Act's judicial review provisions "are not completely applicable to" the plaintiffs' desired claims, Pls.' Opp'n 13, but the D.C. Circuit has made clear that an "alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the same genre." *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009). An alternative remedy may cut off resort to the APA even if there is "some

mismatch between the relief sought and the relief available." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1246 (D.C. Cir. 2017).

The plaintiffs concede that the Sunshine Act provides for judicial review of the adequacy of Sunshine Act regulations and agency decisions about specific meetings but argue that it does not allow for a claim that the agency "wholesale exempt[ed] itself by final rule from Sunshine Act requirements entirely." Pls.' Opp'n 14. But the Sunshine Act specifically authorizes judicial relief compelling an agency to adopt regulations in accordance with the Sunshine Act if its regulations are inadequate, or if it has no such regulations. *See* 5 U.S.C. § 552b(g). In a case challenging violations of the Sunshine Act in connection with a particular meeting, § 552b(h)(1) of the Sunshine Act also authorizes declaratory and injunctive relief, including "an injunction against future violations." *Id.* § 552b(h)(1). And while in this case the DFC was not required to engage in notice and comment before rescinding the obsolete OPIC regulations, *see* Def.'s Mem. 12–14, in an appropriate case a claim of procedural irregularities in the amendment of Sunshine Act regulations could be raised in a suit seeking to enforce the terms of the Sunshine Act in connection with a particular meeting under § 552b(h)(1) or a challenge to agency action under § 552b(h)(2). The relief authorized by the Sunshine Act, while perhaps not identical to the relief the plaintiffs request under the APA, is clearly "of the same genre" such that the plaintiffs may not proceed with claims under the APA.

### B. The DFC's removal of obsolete OPIC regulations did not require notice and comment.

Even if the plaintiffs could rely on the APA, their claims under the APA would fail. As the DFC explained in its opening brief, the removal of OPIC's obsolete regulations was exempt from the notice and comment requirements of the APA as a matter of "agency organization, procedure,

or practice," 5 U.S.C. § 553(b)(3)(A), or as an interpretive rule or general statement of policy. *See* Def.'s Mem. 12–14.

The plaintiffs' opposition brief does not address the binding D.C. Circuit precedent cited in the DFC's brief, nor does it cite any case in which a court concluded that notice and comment were required for any action similar to DFC's removal of the OPIC regulations. The D.C. Circuit's statement in *Environmental Defense Fund, Inc. v. Gorsuch*, 713 F.2d 802 (D.C. Cir. 1983), that notice and comment is "normally" required for suspension of regulations, *id.* at 816, *cited in* Pls.' Opp'n 20, does not support the plaintiffs in this case. The court was addressing the suspension of the implementation of regulations that established substantive standards, not procedural rules falling within the § 553(b)(3)(A) exception. *See Envtl. Def. Fund, Inc.*, 713 F.2d at 816. Indeed, the court went on to examine whether the challenged agency action, despite having the effect of suspending regulations, was exempt from notice and comment requirements because it fell within a statutory exception. *See id.* at 816–17.

The plaintiffs focus on their allegations (again, from the declarations, not the complaint) that the removal of the OPIC regulations has impaired their activities, Pls.' Opp'n 19–22, but the D.C. Circuit has explained that procedural rules are exempt from notice and comment even though they may have "substantial impact" or "harsh effects" on the public. *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 641 (D.C. Cir. 2002) (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987)). Nor does characterizing the challenged action as "the DFC's decision to exempt itself from Sunshine Act obligations altogether" change the analysis. Pls.' Opp'n 16. As discussed in DFC's opening brief, "Sunshine Act regulations—or the removal of Sunshine Act regulations—pertain to how the agency will conduct proceedings and thus qualify as procedural rules." Def.'s Mem. 13.

7

### C. Even if notice and comment had been required, the failure to provide notice and comment was harmless.

Even if the plaintiffs could bring a claim under the APA, and even if notice and comment were required, the plaintiffs still could not prevail, because the failure to provide notice and comment would amount to harmless error. As DFC demonstrated in its opening brief, failure to provide notice and comment amounts to harmless error when the agency's chosen course was the only available option, such that notice and comment could not have made a difference. The DFC's conclusion that it is not subject to the Sunshine Act was compelled by the terms of the Sunshine Act as interpreted by the D.C. Circuit, and the DFC could not have reached any other conclusion. *See* Def.'s Mem. 14–15.

In opposition, the plaintiffs argue that had they been provided the opportunity to comment, their comment would have consisted largely of informing DFC about the importance of public meetings and the effect on their activities from not holding public meetings, much as they argue throughout their brief. Pls.' Opp'n 23–25. But even if the DFC's conclusion was undesirable or even harmful, that does not mean the DFC could have reached a different conclusion. The DFC was constrained by decisions that had already been made by Congress—it was Congress, not the DFC, that wrote the provisions of the Sunshine Act delineating its scope of application and the provisions of the BUILD Act[3] determining the structure of the DFC under binding D.C. Circuit authority. In short, any failure by DFC to provide notice and comment here was harmless because it would not have changed the outcome of the final rule, notwithstanding any alleged "harm" to the plaintiffs from that rule.

---

[3] Better Utilization of Investments Leading to Development (BUILD) Act of 2018, 22 U.S.C. §§ 9601–9689.

### D. The plaintiffs' claims fail on the merits because the DFC is not an "agency" under the Sunshine Act.

Whether under the APA or the Sunshine Act, the plaintiffs' claims also fail on the merits because the DFC is not an "agency" under the Sunshine Act. As set forth in DFC's opening brief, the Sunshine Act applies only to entities that meet the specific definition of the term "agency" in 5 U.S.C. § 552b(a)(1). The term "agency" means an Executive Branch authority or independent regulatory agency "headed by a collegial body composed of two or more individual members, a majority of whom are appointed to such position by the President with the advice and consent of the Senate." *Id.* Under the BUILD Act, the DFC Board of Directors has nine members. Only four members—less than a majority—are appointed to the Board by the President with the advice and consent of the Senate. 22 U.S.C. § 9613(b)(2)(A). Accordingly, the DFC is not an "agency" under § 552b(a)(1).

The plaintiffs contend that the DFC is subject to the Sunshine Act because one of the remaining five members of the DFC Board is the Chief Executive Officer of the DFC, who is appointed by the President with the advice and consent of the Senate. *See* Compl. ¶¶ 11, 13, 44–45, 50–51; *see also* 22 U.S.C. § 9613(b)(2)(A)(i), (d)(1). But the D.C. Circuit held in *Symons v. Chrysler Corp. Loan Guarantee Board*, 670 F.2d 238 (D.C. Cir. 1981), that the phrase "appointed *to such position*" in § 552b(a)(1) means appointed *to a board position*. *See Symons*, 670 F.2d at 241. A member who serves on a board by virtue of holding some other appointment does not count.

In response to the controlling authority of *Symons*, the plaintiffs argue that "Congress did not place the CEO of the DFC in the same statutory grouping as the four clearly *ex officio* DFC Board members when creating the new agency in the BUILD Act." Pls.' Opp'n 27. They rely on the fact that the Chief Executive Officer of the DFC is mentioned in § 9613(b)(2)(A)(i), while

the other members who are not appointed to the Board by the President with the advice and consent of the Senate are identified in the next subsection, § 9613(b)(2)(A)(ii).

There are at least two fatal flaws in the plaintiffs' argument. First, the rule established in § 552b(a)(1) of the Sunshine Act, as interpreted in *Symons*, turns entirely on the manner of board members' placement on the board—whether the board members were "appointed to their *Board* positions" by the President with the advice and consent of the Senate. *Symons*, 670 F.2d at 240. Nothing in the text of the Sunshine Act or in *Symons* suggests that "statutory grouping" of certain board members is relevant. Second, even if the "statutory grouping" of board members were somehow relevant, the Chief Executive Officer of the DFC is not grouped together with the "four other individuals who shall be appointed by the President, by and with the advice and consent of the Senate." 22 U.S.C. § 9613(b)(2)(A)(iii). Those members are listed in a third subsection, § 9613(b)(2)(A)(iii). The bottom line, which the statutory structure only confirms, is that only four of the nine individuals are appointed to the Board by the President with the advice and consent of the Senate. The BUILD Act clearly provides that the other five are on the Board by virtue of their other appointments, whether as the Chief Executive Officer of the DFC or as one of the officers listed in § 9613(b)(2)(B)(i). Indeed, the Chief Executive Officer of the DFC and the officers listed in § 9613(b)(2)(B)(i) (the Secretary of State, the Administrator of the United States Agency for International Development, the Secretary of the Treasury, or the Secretary of Commerce) are similar in that they are all federal government employees, which the statute specifies the individuals appointed to the Board by the President must not be. 22 U.S.C. § 9613(b)(2)(C)(i).

The plaintiffs also assert that the Chief Executive Officer of the DFC "cannot possibly be properly considered *ex officio* from his own agency." Pls.' Opp'n 29. But whether a board

member is properly considered an "ex officio" member is irrelevant. The distinction drawn by the Sunshine Act is not between "ex officio" members and other members; indeed, the phrase "ex officio" appears nowhere within the Sunshine Act. Rather, the relevant distinction under the Sunshine Act is between members "appointed to their *Board* positions" by the President with the advice and consent of the Senate, *Symons*, 670 F.2d at 240, and members placed on the Board in any other manner. In this regard, it is worth noting that a government board can include individuals other than ex officio members and members appointed to the board by the President. The BUILD Act, for example, specifies that a federal officer who meets certain requirements may serve on the DFC Board as a designee of one of the officers identified in § 9613(b)(2)(B)(i). *See* 22 U.S.C. § 9613(b)(2)(B)(i)(I)–(IV); *see also id.* § 9613(b)(2)(B)(ii) (requirements for designees).

Even if the "ex officio" label were somehow important, it is both common and proper to apply that label to a person who serves on the governing board of an organization by virtue of being an officer of the same organization. *See, e.g.*, *Ex Officio,* Black's Law Dictionary (11th ed. 2019) ("Frequently boards include ex-officio members—that is, persons who are members of the board by virtue of an office . . . held in the society . . . ." (quoting Henry M. Robert, Robert's Rules of Order Newly Revised § 49 (10th ed. 2000))); *cf., e.g.*, 42 U.S.C. § 1863(a) (specifying that the Director of the National Science Foundation serves "ex officio" on its governing board); 22 U.S.C. § 4606(a) (specifying that the President of the U.S. Institute of Peace serves "ex officio" on its governing board); 10 U.S.C. § 2113a(b)(5) (specifying that the President of the

Uniformed Services University of the Health Sciences serves "ex officio" on its governing board).[4]

*Symons* plainly precludes counting the Chief Executive Officer of the DFC as a member "appointed to such position by the President with the advice and consent of the Senate," and the DFC does not qualify as an "agency" under the Sunshine Act.[5]

### E. Even if the DFC were subject to the Sunshine Act, the only permissible relief would be an order requiring the DFC to adopt Sunshine Act regulations.

Even if the DFC were subject to the Sunshine Act, the only relief available in this action would be an order requiring the DFC to adopt Sunshine Act regulations. The plaintiffs' other requests for relief would have to be dismissed. *See* Def.'s Mem. 16–17.

The plaintiffs' opposition brief simply asserts that all their requests for relief would be proper, but they do not seriously engage the arguments the DFC presented based on the text of the Sunshine Act, *see* Def.'s Mem. 16–17 (discussing 5 U.S.C. § 552b(g), (h)(1)–(2)). The plaintiffs do not present any reason why their requests for relief would be authorized.

## CONCLUSION

Because the plaintiffs do not allege a concrete and particularized injury that can support standing, and because the plaintiffs do not state any valid claim under either the APA or the Sunshine Act, the Court should dismiss this action with prejudice.

---

[4] The plaintiffs may be operating under a mistaken belief that the phrase "ex officio" means "outside the agency." *See* Pls.' Opp'n 1 ("Defendant agency's basis for . . . the Final Rule is that the Sunshine Act's Board composition requirements some how allow it to count its own chief executive officer . . . as somehow 'outside the agency' . . . ."). The phrase "ex officio" means "[b]y virtue or because of an office; by virtue of the authority implied by office." *Ex Officio,* Black's Law Dictionary (11th ed. 2019).

[5] The DFC has not contended that its interpretation of the Sunshine Act is entitled to deference under *Chevron U.S.A. Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), or *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), *see* Pls.' Opp'n 29–30. The Court therefore does not need to analyze whether any form of deference would be appropriate.

Date: August 20, 2021                     Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

/s/ JAMES C. LUH
JAMES C. LUH
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St NW
Washington DC 20530
Tel: (202) 514-4938
E-mail: James.Luh@usdoj.gov
Attorneys for Defendant